**UNITED STATES of America, Appellee,**

v.

**Harry Britt BROWN, Jr., a/k/a Harry B. Brown, Jr., Appellant.**

**No. 10173.**

United States Court of Appeals Tenth Circuit.

June 19, 1969.

W. A. Kahrs and Roger Sherwood, Wichita, Kan., for appellant.

Guy L. Goodwin, Asst. U. S. Atty., (Benjamin E. Franklin, U. S. Atty., was with him on the brief) for appellee.

Before MURRAH, Chief Judge, and LEWIS and HOLLOWAY, Circuit Judges.

LEWIS, Circuit Judge.

Appellant Brown was convicted after trial to a jury in the District Court for the District of Kansas on each of three counts of evading income taxes for the years 1959, 1960, and 1961 in violation of 26 U.S.C. § 7201 and on each of three counts of filing false returns for the same years in violation of 26 U.S.C. § 7206(1). Through the expedient of omitting a mass of supporting evidentiary detail, the case against appellant can be simply summarized.

Before, after, and during the subject tax years, Brown was employed by a Wichita newspaper, the Eagle, as its advertising director or in a similar capacity. It was stipulated that in 1959 Brown traded advertising space in the Eagle with numerous local merchants and service companies and personally received in return merchandise and services of the value of $25,133.66; for 1960, the amount was agreed to be $35,066.98 and for 1961, $8,063.48. Brown neither reported nor paid tax on these amounts, nor did the Eagle, and the supporting evidence, viewed in the light most favorable to the government,[1]

---

1. Collins v. United States, 10 Cir., 383 F.2d 296; Steiger v. United States, 10 Cir., 373 F.2d 133; Elbel v. United States, 10 Cir., 364 F.2d 127, cert. den.

was clearly sufficient to establish that Brown participated in the concealment of the transactions from some of his superiors and completely satisfied the burden of the government to establish the fact of a tax due and the appellant's wilful attempt to evade or defeat the tax. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882. We reject, therefore, appellant's contention that the court erred in submitting the case to the jury and pass to a consideration of the claims made by appellant that procedural errors require that a new trial be ordered.

The substance of Brown's defense to the offenses charged was that he had no specific or criminal intent to violate the tax laws in his participation of trade outs with advertisers in the Eagle. He testified that the trade outs were authorized by his superior, Clyde W. Speer, Executive Vice President and Treasurer of the Eagle, as a continuing policy and a part of the Eagle's competitive struggle with its then rival newspaper, the Beacon, to gain national advertising.[2] According to Brown, he had an oral agreement with the Eagle[3] that he would reimburse the newspaper for any merchandise determined by its auditors to be for his personal benefit and not legitimate business deductions of the Eagle. He further testified that he furnished the newspaper with monthly statements of merchandise and services received by him, discussed the propriety of such with Speer, but did not know how the Eagle kept the trade out account although he kept no account for himself and had, at times, directed the credit manager to delete from sales as compared to income, some advertising sold and paid for with merchandise and service.[4] The appellant's defense was summarized by the trial court's instruction to the jury thus:

The defendant contends, among other things, that sometime in 1950 he was placed in charge of the National Advertising Department of the Wichita Eagle and that Howard Fleeson, who was then on the Board of Directors of the Eagle, told him that his training for this position was to be put in the hands of Clyde W. Speer, who was Vice President of the Eagle Company; that in 1952, he became Classified Advertising Manager at Speer's direction; that Speer directed him to join organizations and civic clubs, and to do whatever he could to keep the Wichita Eagle before the public. He contends that in 1954, Clyde Speer talked with him about trading out advertising accounts of the Eagle and was told by Speer that he could negotiate trade outs to stimulate business and meet competition; and that Clyde Speer further told him that if any of the items he received as trade outs were determined by the auditors to be of a personal nature to the defendant, then these would have to be paid for by defendant to the Eagle. The defendant further contends that he agreed with Clyde Speer to this arrangement. Defendant further contends that he received no goods, merchandise or service from advertisers in the Wichita Eagle which were not authorized by his superior, Clyde W. Speer, and that he was ready at all

385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed. 2d 550, reh. den. 386 U.S. 939, 87 S.Ct. 959, 17 L.Ed.2d 812; Van Nattan v. United States, 10 Cir., 357 F.2d 161; Cummings v. United States, 10 Cir., 289 F.2d 904, cert. den. 368 U.S. 850, 82 S.Ct. 83, 7 L.Ed.2d 48.

2. The theory being that trade outs would act as an incentive to local advertisers to advertise with the Eagle and that their advertising in turn could be used as "bell-

cows" to gain national advertising. At time of trial the Eagle had taken over the Beacon.

3. A government witness testified that during the subject tax years Speer "was the Eagle."

4. There is conflicting testimony as to the extent the Eagle kept records of trade outs; however, no such records were introduced.

times to pay for trade outs received by him which were considered to be of a personal nature. He further contends that both Fleeson and Speer directed him to get a large home so he could entertain customers and prospective customers for the Eagle and that he purchased and furnished his mother's home for that purpose.

Defendant contends that he was at all times simply following the orders and directions of his superiors, Speer and Fleeson, in making trade outs in carrying on the entertainment of Wichita Eagle customers and prospective customers as a part of its business promotion and that at no time did he ever have reason to believe or consider, under the circumstances, that the goods, merchandise and service received by him was taxable income to him. You are interested [sic] in this connection that if defendant, Britt Brown, was receiving the trade outs from the Eagle's advertising customers, as he did, because he was obeying his employers' instructions, and that he believed the items he received were not taxable income to him, then he would not be guilty of the offenses charged and you should acquit him. The evidence discloses that Howard Fleeson is dead and that Clyde W. Speer is not physically able to appear as a witness in this trial. This being so, the testimony of Mr. Brown, of what Mr. Fleeson and Mr. Clyde W. Speer told him must be received by you with caution and close scrutiny and be weighed by you in the light of all the testimony and evidence in the case.

As stated in the instruction, Speer was not available as a witness at the trial. However, in two ex parte investigative proceedings, one in 1962 and again in 1964, the government had taken Speer's sworn oral testimony at great length. In each proceeding Speer's testimony corroborated the appellant's trial testimony in many regards. The transcripts of these proceedings were offered by appellant as exhibits[5] and were rejected by the court on the government's objection of incompetent hearsay. Appellant asserts such ruling to be prejudicial error. We agree.

The critical issue to be considered by the jury in this case was not a determination of the acts done by Brown but whether such acts, largely admitted, were done with the specific intent to violate sections 7201 and 7206(1), a necessary element of the charges. Holland, *supra*; McCarty v. United States, 10 Cir., 409 F.2d 793, 1969; Petersen v. United States, 10 Cir., 268 F.2d 87. Accordingly, the accused as part of his defense is entitled to wide latitude in the introduction of evidence which tends to show lack of specific intent.

[E]vidence on the question of intent, where that is material, may take a wider range than is allowed in support of other issues, otherwise there would often be no means to disclose the purpose of the act charged in which the very gist of the offense may consist. Hoyer v. United States, 8 Cir., 223 F. 2d 134, 139.

In recognition of this rule the trial court properly allowed appellant to testify as to the agreement claimed to have been reached between him and Speer, including conversations with Speer and other persons. Haigler v. United States, 10 Cir., 172 F.2d 986. Such testimony when directed to probe subjective intent is not hearsay, Flournoy v. Hewgley, 10 Cir., 234 F.2d 213; Creaghe v. Iowa Home Mutual Casualty Co., 10 Cir., 323 F.2d 981, but the relevancy of all evidence remains a question for the trial court's discretion. Speers v. United

---

5. Appellant's proffered Exhibit D (the 1964 proceeding) states:

"This is a record of sworn testimony supplied by Mr. Clyde W. Speer in Room 119, Internal Revenue Service Building, Wichita, Kansas; com-mencing at 2:10 p.m., on July 22, 1964; relating to the income tax liability of the Wichita Eagle and Beacon Publishing Company, Inc., and Messrs. Jack Speer, Harry B. Brown, Jr., and Royce Sehnert."

**1138**

States, 10 Cir., 387 F.2d 698, cert. den. 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871; Hayes v. United States, 10 Cir., 227 F.2d 540. In the case at bar the relevancy of Speer's testimony, especially in view of the court's cautionary instruction concerning appellant's own testimony concerning the alleged agreement with Speer, is patent. It should be admitted unless clearly barred as incompetent hearsay.

 Broadly stated, pure hearsay is inadmissible because such testimony carries no inherent likelihood of truthfulness and denies to the damaged party the right of cross-examination to establish the actual unreliability of the testimony. Thus, the Speer testimony, taken ex parte by the government, could not be admitted at the instance of the government for appellant would be helpless to refute its content at trial and had no prior opportunity to do so. But the government had such opportunity, in fact created it, and examined Speer, under oath and in accord with accepted and frequently used administrative practice. Whether such procedure disallows the present claim of the government that the Speer testimony must be characterized as hearsay or whether the circumstances allow an exception to the rule of hearsay is of little importance in the practical consideration of its admissibility. *See* V Wigmore, Evidence, 3d Ed., § 1370. Speer's testimony was given under circumstances which lend adequate support for its admission in either case.[6] Such circumstances include the full exercise of an opportunity to examine the witness on the determinative issue of

appellant's asserted defense; the complete cooperation of the witness; an examination under oath and thus within the shadow of possible perjury as a deterrent to untruthfulness; an examination of a witness who himself was admittedly under investigation as a prospective defendant for prosecution and thus had a lurking penal interest to protect but did not do so. *See* Mason v. United States, 10 Cir., 257 F.2d 359, cert. den. 358 U.S. 831, 79 S.Ct. 52, 3 L.Ed.2d 69, and cases cited. It seems abundantly clear that the statement was not subject to the basic dangers that premise the exclusion of hearsay and that the unavailability of the witness to repeat his testimony at trial has allowed the government to present a prosecution that failed to give the jury the opportunity to judge appellant's credibility in view of the potential trustworthiness of Speer's corroborative statements.

We have given consideration to appellant's many other assignments of error and do not consider it necessary, in view of our remand, to discuss them in detail. We do note, however, that the court's instruction No. 16 can be read as being self-contradictory and suggest that its subject matter, the duty of a taxpayer to report business expenses for any taxable year, should be limited to an explanation of that duty as it existed during the tax years in question. Other claims of error made by appellant are either without merit on the present record or are such as will not necessarily recur.

The judgment is reversed and the case remanded with directions to grant a new trial.

6. Rule 8–04 of the preliminary draft of proposed Rules of Evidence for the United States District Courts (March 1969) suggests:

(a) GENERAL PROVISIONS. A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer strong assurances of accuracy and the declarant is unavailable as a witness.

(b) ILLUSTRATIONS. By way of illustration only, and not by way of limitation, the following are examples of

statements conforming with the requirements of this rule:

(1) FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross, or redirect examination, with motive and interest similar to those of the party against whom now offered.