UNITED STATES of America, Appellee,

v.

Charles Wallace NOLAN, Jr., Appellant.

No. 76–1177.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 25, 1977.

Decided March 22, 1977.

Jon K. Sargent, Asst. U. S. Atty., District of Kansas, Wichita, Kan. (E. Edward Johnson, U. S. Atty., Wichita, Kan., on the brief), for appellee.

C. Rabon Martin of Baker, Baker & Martin, Tulsa, Okl., for appellant.

Before LEWIS, Chief Judge, and PICKETT and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Charles Wallace Nolan (Nolan) appeals from a jury conviction on charges stemming from an indictment alleging that he imported controlled substances into the United States in violation of 21 U.S.C.A. § 952(a).

On July 3, 1975, an air waybill was executed in New Delhi, India, by Paul Edward Donegan, pertaining to a crate consigned to Nolan in Emporia, Kansas. Nolan had been in India approximately one month before the crate was shipped. While in India, Nolan had purchased certain musical instruments contained in the crate.

When the crate arrived in the United States, the Customs Director sent a notice to Nolan at Emporia directing him to pick up the package at the airport in Wichita, Kansas. The Customs Director then ran a computer check with the Department of the Treasury for information regarding Nolan. The computer provided information that Nolan had been convicted of a drug importation violation in the Commonwealth of Great Britain in 1973. This prompted the Customs Agent to conduct a careful examination of the crate. By drilling holes in the crate, he determined that it was hollow and that it contained a controlled substance, i. e., marijuana.

After Nolan arrived at the Wichita airport to receive the package, he pointed to the crate with the sitar and drums at its side and remarked "I see you have got my stuff." He said that he had gone to India for about six weeks to learn to play the sitar. Nolan was then arrested, whereupon he said that he had "never been to India" and that he knew nothing of the controlled substance in the crate.

Nolan moved for a suppression of the controlled substance. The motion was denied following a full hearing.

At trial, the government offered the testimony of the Customs Director regarding Nolan's British conviction originally revealed by the Treasury Department computer, to show a justifiable basis for the search. The government also presented the testimony of the British Customs Agent who had apprehended Nolan for importing various contraband materials into the Commonwealth in 1973, ostensibly for the purpose of showing knowledge, intent, motive, common plan and scheme. The British Agent testified about custodial admissions of Nolan, the court proceedings, the presentence investigation and the judicial disposition. The government showed the "street value" of the marijuana and argued to the jury that Nolan hoped to reap great profits from it. Nolan did not present any evidence. The trial court instructed, *inter alia*, that one of the jury's functions was to find the defendant guilty or *innocent* (as compared to the normal standard of not guilty).

Nolan was sentenced to three years imprisonment, followed by a two year probationary term.

On appeal Nolan argues that the court erred (1) in admitting testimony dealing with the prior British conviction; (2) in admitting evidence and argument regarding Nolan's forthcoming distribution of the contraband; (3) in upholding the verdict inasmuch as the evidence was not sufficient to support a conviction; and (4) in instructing the jury.

I.

Nolan contends that the court erred in admitting testimony regarding Nolan's pri-

or British conviction for the importation of hashish.

In 1973, when Nolan was en route from New Delhi, India, to the United States he landed at a London airport. During that stop, a British Customs Agent discovered contraband on Nolan's person and in the base of some wooden lamps he was carrying. The British Customs Agent was allowed to testify about a confession Nolan made to him in Britain and that Nolan was charged with and pled guilty to violation of the British importation laws. We hold that this testimony is admissible.

### A.

Nolan contends that an alien criminal conviction is inadmissible, *per se*, in a United States federal criminal proceeding; and, in the alternative, that before admitting such a criminal conviction, it must be shown that each and every United States constitutional safeguard afforded criminal defendants was complied with in the foreign country where the conviction was obtained.

The government asserts that this issue was not raised at trial and therefore the appellate court should not consider it. In reviewing the record we find, however, that the issue was raised at trial and thus preserved for our consideration. [R., Vol. III, p. 115.]

Nolan admits that he does not have any authority directly in point. He relies on *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). His reliance on *Burgett, supra*, is misplaced. The Court there held that a conviction violative of the constitutional right to counsel cannot be introduced "to support guilt or enhance punishment." 389 U.S., at 115, 88 S.Ct., at 262. The British conviction was not introduced "to support guilt or enhance punishment." It was introduced solely for the purpose of showing intent, design, a continuing course of conduct, guilty knowledge, mental disposition, capacity, habit, plan, motive or identity. Therefore, *Burgett, supra*, is inapplicable.

We have repeatedly held that evidence of uncharged crimes, wrongs or alleged prejudicial acts may be received for purposes proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Freeman*, 514 F.2d 1184 (10th Cir. 1975); *United States v. Parker*, 469 F.2d 884 (10th Cir. 1972); *United States v. Pickens*, 465 F.2d 884 (10th Cir. 1972); *United States v. Pauldino*, 443 F.2d 1108 (10th Cir. 1971), *cert. denied*, 404 U.S. 882, 92 S.Ct. 212, 30 L.Ed.2d 163 (1971); *United States v. Eagleston*, 417 F.2d 11 (10th Cir. 1969). The evidence in question in each of the above cited cases was not that of a criminal *conviction*, but it was that of criminal *activity*. It follows, then, that the evidence introduced under this exception need not be a constitutionally valid criminal conviction. Even if Nolan's British conviction should not meet our federal constitutional demands, it is still admissible under this exception. Furthermore, Fed.Rules of Evid. Rule 404(b), 28 U.S.C.A. supports this conclusion by reference to admission of evidence of "Other crimes, wrongs or acts." That rule does not require proof of a conviction such as that required under Rule 609 of the Federal Rules of Evidence.

We need not decide if a British conviction is admissible to prove guilt or enhance punishment. That issue is not before us.

We hold that an alien conviction is admissible for the purpose of proving a common plan, motive, opportunity, intent, knowledge, identity or absence of mistake if relevant and material to the charges and issues raised in the federal prosecution. The proof of Nolan's British conviction was used for these purposes in the instant case.

### B.

In a related issue, Nolan contends that evidence of his prior British conviction was inadmissible under Fed.Rules of Evid. Rules 404(b) and 403, 28 U.S.C.A.

A British Customs Agent was allowed to testify as to the importation of contraband into England by Nolan two years before the instant incident. The agent stated: that

the contraband was shipped from New Delhi, India, in the base of wood lamps; that Nolan told the British agent that he paid a man in New Delhi to put the contraband in the wooden lamps, and that he intended to smoke part of it; that Nolan pled guilty to the British charge; that Nolan was fined $250.00 and that a prison sentence was defaulted because Nolan left the country. The trial court instructed the jury that this evidence was not admissible for proof of the crime charged, nor for proof that Nolan acted in conformity with his bad character, and further that the evidence should not be considered as constituting a separate or additional crime. The jury was specially instructed that this evidence was admissible exclusively for purposes going to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and for absence of mistake or accident. The jurors were instructed to consider same entirely within these confines.

■ The general rule is that evidence of illegal activities other than those charged is ordinarily inadmissible. There are, however, several well-recognized exceptions to the rule, including receipt of such evidence in order to prove motive, opportunity, identity, absence of mistake or accident. *United ed States v. Freeman, supra; United States v. Burkhart,* 458 F.2d 201 (10th Cir. 1972); *United States v. Pauldino, supra.*

We note that Rule 404(b), *supra,* is not exclusionary in the sense of the above rule of our Court. Rather, it would allow the admission of uncharged illegal acts unless the only purpose for their admission is to prove the criminal disposition of the defendant. We hold that under either rule, however, the evidence of Nolan's prior conviction is admissible.

■ The probative value of proof of the commission of the prior crime must outweigh the prejudice. Rule 403, *supra.* This determination is properly within the trial judge's discretion. *United States v. Drumright,* 534 F.2d 1383 (10th Cir. 1976), U.S. Appeal Pending; *United States v. Baca,* 444 F.2d 1292 (10th Cir. 1971), *cert. denied,* 404 U.S. 979, 92 S.Ct. 347, 30

L.Ed.2d 294 (1971). A critical issue in the case at hand was Nolan's intent and knowledge. Proof of the British conviction was very relevant in the proof of those elements of the crime. In view of its obvious probative value, we hold that the trial court did not abuse its discretion in admitting this evidence.

■ In *United States v. Parker, supra,* we announced some guidelines to test whether evidence of uncharged illegal acts should be admitted: (1) the evidence must tend to establish intent, knowledge, motive, identity, or absence of mistake or accident; (2) the evidence must be so related to the importation of contraband that it serves to establish intent, knowledge, motive, identity, or absence of mistake or accident; (3) the evidence must have real probative value, not just possible worth; and the uncharged illegal act must be close in time to the crime charged. *See also: United States v. Burkhart, supra.*

Evidence that Nolan had imported hashish into England certainly supports the elements of knowledge, intent, and motive.

The instant case is quite similar to *United States v. Marshall,* 526 F.2d 1349 (9th Cir. 1975), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376. There, evidence of cocaine possession was introduced in a heroin distribution trial to show knowledge, intent and motive. The court held:

. . . Both heroin and cocaine are 'narcotic drugs' under 21 U.S.C. § 802(16); if the jury could find Marshall knew the character and uses for the cocaine, they might reasonably infer that he knew the character and uses of heroin.

526 F.2d, at 1360–1361.

Various circuit courts have admitted into evidence proof of other illegal controlled substance activities in a trial dealing with illegal controlled substance charges, as establishing various elements of the crime. *United States v. Wixom,* 529 F.2d 217 (8th Cir. 1976); *United States v. Brettholz,* 485 F.2d 483 (2d Cir. 1973), *cert. denied,* 415 U.S. 976, 94 S.Ct. 1561, 39 L.Ed.2d 871 (1974); *United States v. Alston,* 460 F.2d 48

(5th Cir. 1972), *cert. denied*, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972). We repeat that the evidence of the British conviction was certainly probative of Nolan's intent, knowledge, motive, and absence of mistake or accident.

The factual situation in the instant case and in the British case are so similar that a strong relationship is established. In both cases the controlled substance was imported from New Delhi, India, concealed in wood. The fact of concealment in wood is significant because Nolan confessed to the British Customs Agent that his contact in India was in the business of concealing contraband in wood for exportation. Further, the two transactions are similar in relation to the controlled substance. The British conviction involved hashish, a derivative of Cannabis, and the instant case involved marijuana, also a derivative of Cannabis. The two incidents occurred only two years apart. They were near in time.

We hold that the trial court met all of the guidelines of *Parker, supra*. There was no abuse of discretion in the admission of evidence of Nolan's prior British conviction. Furthermore, the requirements of Rule 404(b), *supra*, were met.

### C.

Nolan contends that the trial court committed prejudicial error in allowing testimony of his prior record to show justification for the search of the packing crate.

U.S. Customs Director William O'Donnell testified that when the shipping crate arrived at the Wichita International Airport, he ran a computer check of Nolan's name with the Department of the Treasury. This yielded information of the British conviction. Armed with this information, he undertook an examination of the crate and discovered the contraband.

Nolan offered to confess the validity of the search if his prior conviction could be withheld from the jury. He offered to stipulate that he would admit that there was probable cause for the search if "the whole English affair was kept completely out of the record." [R., Vol. III, p. 133.] This, of course, would have precluded any evidence of the British crime from being introduced. We have heretofore held that the testimony of the British customs agent as to the British crime was properly introduced under Rule 404(b), *supra*. Accordingly, we hold that Nolan's offer to stipulate was properly rejected.

As Nolan asserts, O'Donnell's testimony relative to the computer-check information was not properly admitted, inasmuch as it went only to the validity of the search, involving a question of law for the court and no issue of relevance for jury determination. *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); *Sparf and Hansen v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895). Even so, we hold that it is harmless error in light of the admissibility of the testimony elicited from the British Customs Agent. Nolan's stipulation would have prevented the admission of any part of "the whole English affair" which clearly was self-serving. We hold that O'Donnell's testimony did not create prejudicial error and that it did not contribute to the conviction. *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### D.

Nolan contends that the trial court erred in permitting the British Customs Agent to establish Nolan's British conviction by oral testimony alone, without presentation of duly certified and authenticated copies of the foreign judgment.

The trial judge offered to have the supporting documents of the British conviction marked when Nolan's counsel objected. Nolan's counsel stated that he did not want them marked. This occurred at the very time the British Customs Agent was testifying. [R., Vol. III, p. 254.] Under these circumstances, Nolan is bound by his own conduct of waiver. His objection here is untimely. He rejected the trial court's offer to cause the subject documents to be

marked for identification and made no subsequent objection as to their admissibility. Further, the British Agent testified that he had charged Nolan personally with the British crime and that he (the agent) was present throughout the British court proceedings against Nolan. Obviously, the agent had first hand, independent knowledge of the facts he testified to.

 We hold that the British Agent's testimony was admissible. There was no abuse of discretion in its admission. Absent an abuse of discretion by the trial court, an appellate court is bound to uphold its ruling as to the materiality and relevancy of proffered evidence. *Young v. Anderson*, 513 F.2d 969 (10th Cir. 1975); *United States v. Twilligear*, 460 F.2d 79 (10th Cir. 1972); *United States v. Brown*, 411 F.2d 1134 (10th Cir. 1969).

#### E.

Nolan contends that his in-custodial confession to the British Customs Agent in 1973 should not have been admitted because it was not shown that Nolan was given the necessary warnings dictated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Concededly, Nolan was not given the specific *Miranda* warnings. He was told, however, that "he was not obliged to say anything unless he wished to do so but anything he did say may be put into writing and may be given in evidence." [R., Vol. III, p. 246.]

 In any event, this contention is without merit. The *Miranda* warnings are "not essential to the validity of a confession which has been given in a foreign country." *United States v. Mundt*, 508 F.2d 904, 906 (10th Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975); *United States v. Chavarria*, 443 F.2d 904 (9th Cir. 1971). The reasoning in *United States v. Chavarria, supra,* is applicable:

. . . *Miranda* was intended as a deterrent to unlawful police interrogations. When the interrogation is by the authorities of a foreign jurisdiction, the exclu-

sionary rule has little or no effect upon the conduct of foreign police. Therefore, so long as the trustworthiness of the confession satisfies legal standards, the fact that the defendant was not given *Miranda* warnings before questioning by foreign police will not, by itself, render his confession inadmissible. . . .

443 F.2d, at 905.

#### II.

Nolan argues that the trial court erred in allowing Agent Miller to testify as to the street value of the contraband seized and that a mistrial should have been granted when the prosecutor stated in his closing argument that:

The defendant knew exactly what he was doing and he hoped to profit by it, to-wit, under the testimony of Special Agent Jim Miller, who testified as to the value, the street value of the marijuana, approximately $20 an ounce. There were approximately 120 ounces, $2,400, which is not too bad for a day's work.

\* \* \* \* \* \*

The defendant got caught with his 'hand in the cookie jar' and now he has to take his medicine. It is that simple. [R., Vol. III, pp. 302–304.]

Nolan contends that this statement persuaded the jury that he was going to sell the marijuana which he had imported, thus constituting a crime with which he had not been charged.

 We hold that the testimony as to the value of the marijuana does not constitute grounds for a mistrial. The trial court properly admitted evidence of the value of the marijuana in order to show a motive for importing it. In that light the testimony relative to the "street value" is both relevant and material. It is common knowledge that contraband is imported into the United States for great profit. The relevancy and materiality of evidence are matters within the sound discretion of the trial court. That judgment will not be disturbed unless there is a clear showing of abuse of discretion. *Young v. Anderson*,

*supra; United States v. Twilligear, supra; United States v. Brown, supra.*

■■■■ The prosecutor's closing argument could be interpreted in two ways: it could imply that Nolan was going to make a profit by selling the marijuana; or, it could imply that Nolan was going to use the marijuana himself and thus save the money it would require if he "bought" it on the "street." When a controlled substance is imported there would seem to be only two reasons for its importation: either for personal use or for resale. The prosecutor's remarks related to these inferences. While either inference may suggest a crime for which Nolan was not charged, and therefore should not have been broached by the Government, still no serious prejudicial error occurred. We do not attribute a lack of intelligence or common sense to jurors in arriving at judgments. The prosecutor is entitled to reasonable latitude in drawing inferences from the record in his closing argument. While we agree that the prosecutor should not have made the challenged remarks, we cannot say that they constituted plain error affecting Nolan's substantial rights in light of the entire record. Fed.R. Crim.P. rule 52(a), 18 U.S.C.A.; *United States v. Gilbert,* 447 F.2d 883 (10th Cir. 1971).

### III.

■■■■ Nolan contends that the evidence is insufficient as a matter of law to support his conviction in that it does not demonstrate that he either shipped or caused the contraband to be shipped.

■■■■ The appellate court does not weigh conflicting evidence or pass on the credibility of witnesses. *United States v. Downen,* 496 F.2d 314 (10th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). The evidence, and all reasonable inferences, must be viewed in the light most favorable to the government. *United States v. Crocker,* 510 F.2d 1129 (10th Cir. 1975).

The evidence viewed in the light most favorable to the government is that:

1. Nolan had been in India just prior to the shipment of the contraband.

2. Nolan had made arrangements to receive the crate prior to its arrival.

3. Nolan stated that the sitar was his, and that he had been in India to learn to play the sitar contained in the crate; however, following his arrest, he recanted, stating that he had never been to India.

4. Nolan knew of an agent in India who would pack contraband in wood for him. Nolan had previously illegally imported a similar controlled substance into Great Britain.

Thus it was shown that Nolan knew of the shipment of the crate before it arrived; that he could arrange for a shipment of this type; and that he knew that importation of marijuana was illegal.

### IV.

Nolan contends that the trial court erred in: (a) instructing on circumstantial evidence; (b) instructing on the function of the jury; (c) by refusing to instruct the jurors that they could not presume that because Nolan received the crate that he had shipped it; and (d) by refusing to instruct that the jury should be reluctant to find guilt because of the greater propensity to convict in a narcotics case. We find these issues to be individually and collectively without merit.

### (a)

■■■■ Nolan contends that the trial court erred by instructing the jury that before circumstantial evidence can establish a fact it must be the only reasonable conclusion but it need not exclude every other possible hypothesis. Nolan asserts that the trial court should have instructed that every reasonable hypothesis of innocence must be excluded.

■■■■ Nolan "admits that the court's instruction is not inherently prejudicial, . . . " [Appellant's Brief, p. 46.] The form of instructions is committed to the discretion of the trial court and there is no

requirement that the court use the exact language as that requested, provided the issues of the case are adequately covered. *United States v. Newson,* 531 F.2d 979 (10th Cir. 1976). We hold that the instruction on circumstantial evidence is not erroneous.

### (b)

 Nolan contends that the trial court erred in instructing the jury that its function was to find Nolan guilty or *innocent.* The trial court did instruct that:

. . . The only matter before you is the question of whether or not the defendant is guilty or *innocent* of the crime charged in the indictment. [Emphasis supplied.]

[R., Vol. III, p. 324.]

The trial court also instructed the jury that there is a presumption of innocence; that a verdict of guilty cannot be returned unless the prosecution has proved that the accused is guilty beyond a reasonable doubt of every essential element of the crime charged [R., Vol. III, p. 309.]; that if two conclusions can be reasonably drawn from the evidence, "one of innocence and one of guilty, you should adopt the former" [R., Vol. III, p. 311.]; and that it is incumbent " . . . upon the United States to establish by the evidence to your satisfaction beyond a reasonable doubt, . . . every material allegation of the offense." [R., Vol. III, p. 319.]

We hold that the totality of the instructions correctly apprised the jury of its function. *United States v. Pennett,* 496 F.2d 293 (10th Cir. 1974).

### (c)

 Nolan contends that the jury should have been instructed that there is no presumption that a person who receives a package knows that the package contains contraband. Nolan does not cite any authority for this proposition. We hold that the instructions taken as a whole properly stated the law as to Nolan's requisite knowledge.

### (d)

Nolan would also have had the jury instructed that the average juror has a greater propensity to return a guilty verdict in a prosecution involving drugs and that the jurors should be careful to avoid this propensity. He can cite no authority beyond his bald contention that the proposition is "common knowledge among the criminal defense law." There is no basis for the adoption of such an instruction. The jurors were instructed to avoid any prejudice they may have for the government.

WE AFFIRM.