UNITED STATES of America, Plaintiff-Appellee,

v.

James Gerald CARLEO, Defendant-Appellant.

No. 77–1103.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted April 19, 1978.

Decided May 12, 1978.

Edward L. Kirkwood, Denver, Colo. (Daniel J. Sears, Federal Public Defender, Dist. of Colorado, Denver, Colo., on brief), for defendant-appellant.

Edward D. Holmes, Kansas City, Mo. (Joseph F. Dolan, U. S. Atty., Dist. of Colorado, Denver, Colo., on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This is a direct criminal appeal from a jury conviction in the United States District Court for the District of Colorado wherein the defendant, Mr. James G. Carleo, was convicted of conspiracy to obstruct justice, (18 U.S.C. § 371) obstruction of a criminal investigation (18 U.S.C. § 1510) and obstruction of justice (18 U.S.C. § 1503). We affirm.

Defendant does not challenge the sufficiency of the evidence. Since the facts are not critical to the disposition of the appeal, a brief summary of the relevant facts as they relate to the issues will suffice.

Defendant and one Samuel J. Danna were joint owners of a bar restaurant in Pueblo, Colorado. During the time in question, the Federal Bureau of Investigation (FBI) and the federal grand jury were investigating gambling activities in the Pueblo, Colorado area. Defendant's lounge was one target of the investigation. At trial the evidence disclosed that Mr. Robert Hull was employed by the defendant during the fall of 1975. During the course of his employment, Hull gained knowledge of certain bookmaking and other gambling activities which were occurring at the lounge.

On or about April 7, 1976, defendant and one Angelo went to Hull's hotel room and told Hull he was going to leave town. Hull testified that defendant made arrangements for him to travel to Las Vegas, Nevada, where he stayed with a Mr. Jim Roush for several days. Hull further testified that defendant called him in Las Vegas and stated that the FBI had learned of his whereabouts and asked him to leave Las Vegas. Hull then traveled to Portland, Oregon, where he contacted the FBI. Hull returned to Pueblo nine days after his departure and visited defendant at his bar. He ultimately went to Denver and testified before the grand jury. The criminal charges against defendant were based upon his order that Hull leave town and his less than subtle threat that it might be good for Hull's health not to say anything.

Defendant raises three issues on appeal: 1) whether the trial court erred in allowing the prosecution to introduce evidence of defendant's prior assault upon a suspected informer; 2) whether reversible error occurred when the prosecutor commented in front of the jury on defendant's opportunity to take the witness stand in his own defense; and 3) whether the opening and closing arguments of the prosecutor constituted character testimony regarding the credibility of defendant and Hull, thereby denying defendant his Sixth Amendment right to confrontation.

I.

In its opening statement, the government stated the evidence would show that a few months prior to the obstruction and conspiracy now in question defendant had beat up

a man in the presence of Hull and then told Hull: "That's what we do to informers." Record, vol. 2, at 17–19. Defendant promptly objected and made a motion for mistrial which was denied. Hull, the potential grand jury witness, later testified at trial that defendant asked him to bring a man named Dickinson to defendant's bar. Hull's testimony was that immediately after defendant and his partner had severely beaten Dickinson, defendant warned Hull, "[T]hat's what happened to snitches." Record, vol. 2, at 104.

Dickinson was also called as a government witness. Anticipating the probable content of his testimony, the court called a recess to "give [defendant] a reasonable opportunity to object to the testimony before the jury in the event it should prove to be of questionable admissibility." Record, vol. 3, at 40. After hearing Dickinson relate how defendant and his bartender had hit and kicked him, the court ruled: "I'll treat that as an offer of proof and that it is relevant. It's relevant on the question of intent and motive." Id. at 47. The jury was called back and instructed: "Testimony is being received for the very limited purpose of shedding what light it may, if any, on the motive and intent of the defendant in your consideration of the charges made against him in this case." Id. at 44. Dickinson then testified that during the time he was being severely "beaten upon with a fist and kicked about the head and shoulders," defendant had threatened "if [he] wanted to be another Nance, they [that is defendant and his partner] could arrange that." Id. at 45. Further testimony disclosed that Nance was widely known as a former police informant who had been shot about two years earlier in Pueblo.

Defendant objected to Dickinson's testimony as being in violation of Rule 403 of the Federal Rules of Evidence. He now complains that the admission of this testimony violates Rules 402, 403, and 404. ■ Violations of 18 U.S.C. §§ 1503 and 1510 both require proof of a specific intent to obstruct justice. See, e. g., United States v. Lippman, 492 F.2d 314 (6th Cir.

1974), cert. denied, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975) (§ 1510); United States v. Ryan, 455 F.2d 728 (9th Cir. 1972) (§ 1503); see Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893). Thus it cannot be said that the trial court abused its discretion in finding the evidence relevant under Rule 402. We agree that testimony of defendant's assault upon Dickinson, with the accompanying warning to Hull, was probative of defendant's intent and motivation when, only a short time later, he told Hull to leave town and threatened "it might be good for [Hull's] health if [Hull] didn't say anything." Record, vol. 2, at 110, 115.

■ We recognize, however, that even relevant evidence should be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice." While trial courts have discretion in striking the balance between probative value and unfair prejudice, United States v. Nolan, 551 F.2d 266, 271 (10th Cir.), cert. denied, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977), and cases cited, they must be particularly sensitive to the potential prejudice that is always inherent in evidence of an accused's prior uncharged crimes or wrongs. See United States v. Burkhart, 458 F.2d 201 (10th Cir. 1972) (en banc). Although Rule 403 provides broad umbrella protection from unfair or undue prejudice, the specific provision in Rule 404(a) prohibiting evidence of uncharged crimes to show bad character or tendencies toward criminality not only reflects the special danger of other crimes evidence but should alert trial courts to be particularly careful in admitting such evidence. See id. at 204 and n. 3.

■ We are convinced that the trial court here acted with the sensitivity and caution that considerations of other crimes evidence require. The court called a recess in order carefully to consider the nature and purpose of the proffered evidence outside the presence of the jury before it was introduced. Moreover, the jury was instructed immediately prior to the introduction of the testimony that it was "being

received for the very limited purpose of shedding what light it may, if any, on the motive and intent of the defendant in the [jury's] consideration of the charges made against him in this case." Record, vol. 3, at 41. The court also cautioned the prosecution not to go into the details of Dickinson's beating, and the government did not attempt to go beyond the scope of inquiry delineated by the court.

We commend the trial court for the manner in which he handled the offer of proof and introduction of this evidence. We hold the court did not abuse his discretion in determining that the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice." His determination is supported by the explicit provisions of Rule 404(b) which, *inter alia*, allow evidence of other crimes, wrongs, or acts as proof of motive or intent. *See United States v. Nolan*, 551 F.2d at 270, and cases cited.

## II.

Defendant's second contention arises out of an incident that occurred during the government's redirect examination of one of its witnesses. Defendant elected to represent himself although, the court provided an appointed attorney who sat in the courtroom and occasionally consulted with him. Defendant apparently made some body movements which indicated agreement or disagreement with the testimony being given. The government interrupted its questioning and, in the presence of the jury, stated, "Excuse me, Your Honor, if Mr. Carleo wishes to testify, I have no objection, but he's nodding his head whenever the witness is getting ready to answer and I think that's not proper." Record, vol. 2, at 68. It appears the trial court also observed defendant's body movements, for he immediately admonished: "That isn't proper, Mr. Carleo. I'm sure its inadvertent. . . . Please try not to do it, just watch." *Id.*

■ Defendant complains the prosecutor's comment violates the rule of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which essentially prohibits any prosecutorial comment on an accused's failure to testify. The test followed by this court in determining whether a comment will be considered a reference to a defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955). *See United States v. Walton*, 552 F.2d 1354, 1362 (10th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977); *United States v. Bishop*, 534 F.2d 214, 220 (10th Cir. 1976). Assuming without deciding that the government's remark satisfies the threshold test enunciated in *Knowles*, it is clear this issue is mooted by defendant's election to testify in his own defense. The danger that a jury might infer guilt from an accused's failure to testify simply is not present when he actually does take the stand and testify.

■■ When comments relating to an accused's opportunity to testify are followed by his actual testimony, the relevant inquiry is whether his testimony in effect was coerced or compelled by the prior comments. Appellant conceded at oral argument that the testimony here was not compelled by the prosecutorial remark in question; nor are we able to find any evidence of compulsion in the record. The "compulsion," if any, was produced by nothing more than a strong evidentiary case against defendant. This type of pressure, however, is not the kind of compulsion protected against by the Fifth Amendment. *United States v. Worth*, 505 F.2d 1206, 1209 (10th Cir. 1974), *cert. denied*, 420 U.S. 964, 95 S.Ct. 1358, 43 L.Ed.2d 443 (1975).

## III.

The final error asserted by Mr. Carleo is that he was denied his Sixth Amendment right to confrontation by certain comments of the prosecutor made during opening and closing remarks. He claims these comments constituted testimony by the prosecution regarding the character of defendant

and Hull, the prosecution's chief witness. The focus of this claim is on the prosecutor's rebuttal closing argument, during which the prosecutor repeatedly framed his summation in the first person singular.[1] Defendant claims a straight Sixth Amendment violation rather than a more general due process violation measured under the prosecutorial misconduct standard.

██ We make several preliminary observations. First, while the issue is framed in Sixth Amendment terms, the cases relied on by defendant are all "prosecutorial misconduct" cases and we feel the issue should be resolved under the due process clause by applying the prosecutorial misconduct test. Second, while defendant made no objection at trial, the trial judge on his own motion raised and sustained an objection for defendant. Subsequent to the verdict, defendant's court appointed counsel filed a timely but unsuccessful Rule 33 motion for new trial on the same ground. We will therefore resolve the issue on the merits. Finally, we note that the trial judge was extremely sensitive to the potential problem posed by the manner in which the prosecutor framed his closing argument and *sua sponte* admonished the jury that the prosecutor's remarks were not to be considered evidence.

██ We have not hesitated in the past to order a new trial when the comments made by the prosecution have been so egre-

---

1. The defendant cites as examples of improper prosecutorial comments the following excerpts from the record, vol. 3, at 107 15:

Well, of course, that's not the issue at all. If there is an issue, and I don't think there really is any issue in the case, but if there is, it's whether or not you believe Mr. Hull or whether you believe this defendant.

. . . There are many ways of determining what the facts are and by that point in the trial I think that the evidence amply reflected why cross-examination of Mr. Carleo's story was unnecessary.

. . . What could I ask him [the defendant], are you telling the truth? Well, it's obvious, I think, from the evidence that he was not telling the truth when he tells you he didn't have any involvement in bookmaking or gambling. The evidence refutes that.

. . .

He [the defendant] said he had no knowledge that the FBI was looking for Hull. Well, that's patently false in the fact [sic] of all the other evidence. It's not even reasonable.

. . . .

. . So there's no point in cross examining him [the defendant] as to whether or not Mr. Hull did mooch and steal. Mr. Hull was under oath when he testified here and, I think, he testified truthfully.

Mr. Carleo said, "I've never been convicted of a crime." Well, I couldn't cross-examine him on that. I assume that's true, that may very well be. That you have an insight into this case as to why it is Mr. Carleo hasn't been convicted of a crime, but apart from that, it's not relevant to the case. . . .

What you learned, I think, is that Mr. Hull is not very bright. Just like all of Mr. Carleo's friends said, he's not too bright. But you watch Mr. Carleo here, he is extremely bright, extremely intelligent. He not only is capable, without being a lawyer, of conducting a very sophisticated defense, I think you could see from your own observations he's capable of telling a story on the stand, and a story which fits right in with the facts that the government is able to prove and says, "Well, I just wanted Hull to go out there to help him out and get him a job." . . . What about Mr. Carleo? Was that a real picture and honest demeanor? Or is the real Mr. Carleo somebody who drags somebody out in the alley and has a big guy like Tom Savells beat him in the chest and kick him and say, "If you want to be like Nance," the guy that got killed cause [sic] he was an informant. That's the real Gino Carleo. That's the real Gino Carleo. Mr. Hull knows that's the real Gino Carleo, lived with him in the basement. But the Mr. Carleo you saw testifying is the polite, sophisticated gentleman. That's not the real Mr. Carleo. That's the real Mr. Carleo. . . .

. . . Even this defendant admits he [Hull] was in day and night. So he [Hull] didn't make up the story. He was there and he saw it. . . .

. . Well, it's obvious, the defendant in this case has a high motive to lie. If there's a way he can tell you a story and act polite and nice on the stand and get you to believe that he's not the person who the evidence reflects he is, he's going to do it.

. . But the evidence in this case was, nevertheless, extremely strong. It was corroborated. Mr. Hull's story was believeable.

. . . I think when you review that evidence, you will conclude that it is sufficient beyond a reasonable doubt that the real Gino Carleo is the one that witnesses such as Art Dickinson told you about. The one that on the slightest provocation will take whatever steps necessary to be sure no one communicated information about him.

gious that they have irreparably prejudiced the defendant. *See, e. g., United States v. Latimer,* 511 F.2d 498 (10th Cir. 1975); *United States v. Ludwig,* 508 F.2d 140 (10th Cir. 1974). And, of course, it cannot be gainsaid that the prosecution would commit such error if it personally attacks or vouches for the credibility of any witness. *See, e. g., id.; United States v. Martinez,* 487 F.2d 973 (10th Cir. 1973).

██ We are of the opinion that the remarks here, when viewed in relationship to the case in general, fall short of the types of remarks which in the past have required reversal. The comments here, while not sanctioned by either the trial court or this court, were not in our opinion testimonial in nature. They can perhaps best be characterized as a "mannerism" in the prosecutor's presentation. The comments were based upon what had transpired within the four walls of the courtroom; they were not based upon information gained, or implied to have been gained, from an independent source. The prosecutor was neither personally vouching for the credibility of the government witness nor personally attacking the credibility of the defendant. He was not attempting to convey to the jury that he somehow possessed information on the credibility of these key witnesses to which the jury was not privy. In sum, while the manner of presentation was improper, we cannot say the trial court abused his discretion in denying defendant's motion for new trial based upon alleged prosecutorial misconduct. This is particularly true where the jury was properly instructed. *United States v. Guerrero,* 517 F.2d 528, 531 (10th Cir. 1975).

AFFIRMED.