**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Julian Peter GABRIEL,**
**Defendant-Appellant.**

No. 82–1587.

United States Court of Appeals,
Tenth Circuit.

Sept. 6, 1983.

Frederic B. Rodgers, Breckenridge, Colo., for defendant-appellant.

John O. Martin, Asst. U.S. Atty., Kansas City, Kan. (Robert N. Miller, U.S. Atty., and Linda A. Surbaugh, Asst. U.S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Before McWILLIAMS, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Julian Gabriel was convicted after a jury trial of bank robbery and assault in the commission of a bank robbery under 18 U.S.C. § 2113(a), (d) (1976). On appeal, Gabriel alleges as error: (1) the denial of his motion for a bill of particulars; (2) the denial of his motion to suppress evidence; (3) the trial court's refusal to admit allegedly exculpatory evidence; (4) the trial court's instruction on recently stolen property; and (5) prosecutorial misconduct. We affirm.

On October 22, 1981, an armed man wearing a ski mask entered a bank in Colorado Springs and ordered the tellers to put all their money into pillowcases that he gave them. One of the tellers placed bait money and an exploding red dye pack into the pillowcase she had been given. After collecting about $24,000, the robber ran out of the bank and got into a white car which then filled with red smoke. The white car was driven away from the bank and behind a building. Shortly thereafter, two men in a red car were observed speeding from behind the same building, and the white car was observed abandoned behind it.

On November 2, 1981, federal agents travelled to Gabriel's Foxton, Colorado home in an attempt to locate an individual named Howard Beall on a matter unrelated to the bank robbery. The agents had been advised by teletype that Beall was wanted on an outstanding arrest warrant for unauthorized flight to avoid prosecution. The teletype further stated that Gabriel was a known associate of Beall, and that Gabriel resided in Foxton.

Gabriel's house appeared to be in an unfinished condition. One of the agents went to Gabriel's front door and knocked repeatedly. When no one answered, he stepped off the front porch and looked through a front window into the living room. He observed items of clothing and several ski masks. The agent then went to another front window and looked into a bedroom. He observed clothing, a bed, a revolver with red coloring on the handle, and a white cloth with red coloring on it. Coincidentally, the agent was also working on the Colorado Springs bank robbery and immediately connected the ski masks, the gun, and the red-stained cloth with that

crime. The agents left Gabriel's residence without seizing the items and subsequently obtained a search warrant based on what they had seen.

Beall and Gabriel were arrested later that same day after a high speed chase during which a briefcase containing red-stained money and bait bills was thrown from their car. Prior to Gabriel's trial, Beall pled guilty and admitted robbing the bank and throwing the case out of the car.

## I.

### DENIAL OF A BILL OF PARTICULARS

The indictment in this case charged both Beall and Gabriel with the robbery.[1] Gabriel moved for a bill of particulars disclosing by exactly what acts the Government alleged he had committed the crime. At the hearing on Gabriel's motion, the Government stated that it was relying on alternative theories that Gabriel either actually entered and robbed the bank or drove the red "switch car" observed speeding away from the abandoned white car. The district court denied the motion.

The denial of a motion for a bill of particulars is within the trial court's discretion. *United States v. Moore,* 556 F.2d 479, 483 (10th Cir.1977). The court's decision will not be disturbed if the indictment is sufficient to enable the defendant to prepare a defense, to avoid prejudicial surprise at trial, and to bar the risk of double jeopardy. *United States v. Barbieri,* 614 F.2d 715, 719 (10th Cir.1980). A bill of particulars may not be used to compel the Government to disclose evidentiary details or "to explain the legal theories upon which it intends to rely at trial." *United States v.*

*Burgin,* 621 F.2d 1352, 1359 (5th Cir.1980), cert. denied, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980).

In refusing to grant the motion, the district court pointed out that the Government had fully disclosed all the documentary and physical evidence it intended to produce at trial. Given this full disclosure and the alternative nature of the Government's case, the district court's decision was clearly not an abuse of discretion. Indeed, we agree with the court's observation that nothing was left to disclose.

## II.

### THE MOTION TO SUPPRESS

Gabriel moved to suppress all evidence resulting from the observations made by the agent who visited his residence and peered through the windows. The district court denied the motion, finding that the search was within the "plain view" exception to the warrant requirement as enunciated in *Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564 (1971).

The agent did not have a warrant to search for evidence of the Colorado Springs bank robbery when he looked through the windows of Gabriel's residence, a place in which Gabriel clearly had a legitimate expectation of privacy. Consequently, the Government bore the burden at the suppression hearing of establishing that the intrusion was justified. *United States v. Finefrock,* 668 F.2d 1168, 1170 (10th Cir. 1982).

A warrantless search may be justified under the plain view doctrine if the

---

1. The indictment charged:
   "On or about October 22, 1981, at Colorado Springs in the State and District of Colorado, JULIAN PETER GABRIEL and HOWARD M. BEALL did willfully and feloniously and by force and violence or intimidation take from the person and presence of Marriette Warren, teller, Northern National Bank, 3100 North Nevada Street, Colorado Springs, Colorado, approximately $24,000.00, money and property belonging to and in the care, custody, control, management and possession of Northern National Bank, the deposits of which were then and there insured by the Federal Deposit Insurance Corporation; and JULIAN PETER GABRIEL and HOWARD M. BEALL, in committing the aforesaid act, did assault Marriette Warren and put in jeopardy her life and the lives of others by the use of a dangerous weapon and device, namely, a handgun, all in violation of Title 18, United States Code, Section 2113(a) and (d)."
   Rec., vol. I, at 1.

Government shows that "the initial intrusion which afforded the plain view was lawful, that the discovery was inadvertent, and the incriminating nature of the evidence was immediately apparent." *United States v. Tolerton,* 669 F.2d 652, 654 (10th Cir.1982), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 473 (1982) (citing *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038).[2]

After the hearing below, the district court concluded that the *Coolidge* requirements had been satisfied. The court found that the initial intrusion was lawful because the agents were on the property looking for Beall pursuant to the warrant information received by teletype, and that the items were plainly visible through the windows. The court further found that the discovery was inadvertent because the agents were seeking Beall on a matter unrelated to the bank robbery, and that the incriminating nature of the items was evident to the agents, who immediately connected the evidence with the bank robbery.

■ "Where a motion to suppress is heard, the credibility of the witnesses, the weight to be given the evidence, and the drawing of inferences are for the trial judge." *United States v. Axselle,* 604 F.2d 1330, 1335 (10th Cir.1979). We will not disturb a district court's determinations made pursuant to a suppression hearing when, as here, they are not clearly erroneous. *See id.; United States v. Hansen,* 652 F.2d 1374, 1386 (10th Cir.1981). The agent did not exceed the scope of his legitimate purpose by looking in the windows. *See United States v. Wheeler,* 641 F.2d 1321, 1327 (9th Cir.1981); *United States v. Anderson,* 552 F.2d 1296, 1300 (8th Cir.1977). Because the house appeared under construction, the agent acted reasonably in peering through the windows to ascertain whether someone was living there.

## III.

## ADMISSION OF THE PLEA TRANSCRIPT

As noted above, Beall pled guilty prior to Gabriel's trial. During the hearing on his plea, Beall responded affirmatively when asked by the court if he was "the bank robber that robbed that bank on October 22, 1981." Rec., vol. III, at 4. He also admitted throwing the briefcase from the car during the high-speed chase on November 2. The fact that Beall had pled guilty was made known to the jury during Gabriel's trial. In addition, however, Gabriel moved to admit the hearing transcript under Fed. R.Evid. 804(b)(3), claiming that Beall's statements against interest were exculpatory to Gabriel.[3] The trial court denied this motion.

■ Rule 804 provides for the admission of certain hearsay statements if the declarant is unavailable. A declarant is unavailable if he is "absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the

---

**2.** Justice Rehnquist has recently pointed out that the standards set out in *Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564 (1971), have not been adopted as binding precedent by a majority of the Court. *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983) (plurality opinion). However, he further noted that the *Coolidge* plurality formulation of the plain view requirements "should obviously be the point of reference for further discussion of the issue," *id.,* and analyzed the facts before the Court in terms of the *Coolidge* factors. Two Justices considered the *Coolidge* plurality formulation binding. *See id.* at 1545 (Powell & Blackmun, JJ., concurring). Accordingly, we believe that evaluation of the plain view doctrine under the *Coolidge* standards as clarified by the discussion in *Texas v. Brown* is appropriate.

**3.** Rule 804(b)(3) defines a statement against interest as

"[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance *or testimony*) by process or other reasonable means." Fed.R.Evid. 804(a)(5) (emphasis added). Gabriel admitted to the district court that Beall was *not* unavailable. In fact, the Government had offered to immunize Beall so that he could testify.

Gabriel asserts, however, that a declarant need not be unavailable if his testimony has been procured, citing the parenthetical phrase within subsection 804(a)(5). This novel argument frustrates the intent of the rule and misconceives the purpose behind the parenthetical phrase. The parenthetical was "designed primarily to require that an attempt be made to depose a witness (as well as to seek his attendance) as a precondition to the witness being deemed unavailable." H.R.Rep. No. 650, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S.Code Cong. & Ad.News* 7051, 7075, 7088. Gabriel was clearly able to depose Beall and procure his attendance at trial, had he wished to do so. Accordingly, Beall was not unavailable within the meaning of Fed.R.Evid. 804, and the court properly refused to admit his hearsay statement.

## IV.

### THE RECENTLY STOLEN PROPERTY INSTRUCTION

█ The district court instructed the jury on the inferences that might be drawn from the unexplained possession of recently stolen property. Gabriel alleges that the court's instruction erroneously shifted the burden of proof to him. We are unable to review this allegation of error because Gabriel has failed to include in the record on appeal a transcript of the court's instruction. However, we note that we have previously rejected this argument with respect to an instruction that described a permissive inference. *See United States v. White,* 649 F.2d 779, 782 (10th Cir.1981), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 186 (1981).

## V.

### PROSECUTORIAL MISCONDUCT

Gabriel asserts that the prosecutor's references in closing argument to her personal beliefs, opinions, and recollection of the evidence denied him due process.

Before closing arguments, the court properly reminded the attorneys that according to the Code of Professional Responsibility they were not to state their own opinions about the case. The court cautioned counsel not to say "I believe" or "I think." Despite this timely and proper admonition, in rebuttal to defense counsel's closing argument the prosecutor repeatedly phrased her comments on the evidence in terms of "I think." At one point she stated that she thought a government witness was "very reliable." Rec., vol. II, at 68. Following a defense objection, the court again admonished the prosecutor not to state her own opinion. At that time, defense counsel stated "[i]f you would just stop doing it, Defense would withdraw its objection." *Id.* at 73. After this exchange, the prosecutor successfully avoided voicing her personal opinion.

█ An attorney may not express her personal beliefs concerning the evidence or the witnesses. *United States v. Grapp,* 653 F.2d 189, 195 (5th Cir.1981). This court has repeatedly condemned personalized vouching for the integrity of government witnesses. *See, e.g., United States v. Beckman,* 662 F.2d 661, 662 (10th Cir.1981); *United States v. Carleo,* 576 F.2d 846, 851–52 (10th Cir.1978), *cert. denied,* 439 U.S. 850, 99 S.Ct. 153, 58 L.Ed.2d 152 (1978); *United States v. Ludwig,* 508 F.2d 140, 143 (10th Cir.1974); *United States v. Martinez,* 487 F.2d 973, 977 (10th Cir.1973). However, we have recognized a distinction between personal comments that are testimonial in nature and those that "can perhaps best be characterized as a 'mannerism' in the prosecutor's presentation." *Carleo,* 576 F.2d at 852. The prosecutor's repeated use in this case of the phrase "I think" falls into the latter category. When defendant objected, she changed her phraseology to "I submit." Although we conclude that the statements in context do not require reversal under the

circumstances of this case,[4] *see, e.g., Grapp*, 653 F.2d at 195–96, we emphasize that such conduct risks a reversal that is unnecessary and easily avoided.

Affirmed.

---

4. We note that after the prosecutor's closing argument the judge cautioned the jury that "it is not the attorneys' recollection of the facts which is important in this case; it is your recollection of the facts. The attorneys may or may not have stated a correct recollection of the facts in their closing arguments." Rec., vol. II, at 80.