**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eli Ellis GILBERT, Defendant-Appellant.**

**No. 706–70.**

United States Court of Appeals, Tenth Circuit.

Aug. 30, 1971.

884

Nathan G. Graham, U. S. Atty. (Robert P. Santee, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Phillip A. Less, for defendant-appellant.

Before SETH and DOYLE, Circuit Judges, and KERR, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

On June 23, 1970, the defendant-appellant herein was found guilty of the charge of selling a narcotic drug, heroin, not "in pursuance of a written order * * * on a form to be issued in blank for that purpose by the Secretary or his delegate." (Contrary to 26 U.S.C. § 4705(a).) This conviction is before us on appeal.

The questions to be reviewed include the following:

1. Whether it was error requiring a mistrial for the trial court to receive evidence that on the occasion of the sale the "buyer" at the request of defendant administered a shot of heroin to him, thus showing that defendant was a heroin addict, a fact said to be not relevant to the charge.

2. Whether closing arguments of the district attorney constituted prejudicial misconduct requiring the trial court to take action on its own motion.

3. Whether there was plain error arising from the alleged failure of the trial court to instruct the jury as to the elements of the offense and to give a cautionary instruction as to the testimony of the "buyer" of the drug who was shown to have been a paid informer.

4. Whether the prosecution's evidence was deficient in not properly and completely establishing the chain of evidence.

We have concluded, after careful scrutiny of the record, that these contentions lack substantial merit and must be therefore rejected.

The transaction which we are called on to review occurred on the evening of June 25, 1971. Kelly McCullough, special agent for the Bureau of Narcotics and Dangerous Drugs in company with one Eddie Edrington, who was shown to have been a drug addict who was known to the defendant, went to the residence of defendant in Tulsa, Oklahoma, for the purpose of buying heroin. They were admitted to the house by one Ernest Brown and were shown into the back room. The defendant was there and was sitting at a table mixing something in a small cap. On the table was a plastic vial which contained some clear gelatin capsules containing a brown powder, together with two hypodermic syringes. Edrington placed $25.00 on the table. At that point defendant asked Edrington who McCullough was, to which Edrington replied that McCullough was his wife's brother. Defendant then asked McCullough if he shot stuff. McCullough replied that he did not. Defendant asked him to go to the front of the house and wait.

According to evidence of Edrington, defendant asked him to give him a "fix" —a shot of heroin as he was having difficulty "fixing" himself. Edrington did as requested and then obtained a large capsule for the $25.00 and left. Thereafter, he gave the cap to McCullough

(the funds for the purchase had been furnished) and they met other agents. Search followed and the cap was placed in foil and a lock seal envelope and mailed to the Oklahoma state laboratory for analysis.

The chemist from the laboratory testified that the substance was heroin. The material analyzed was received in evidence without objection.

Ernest Palmer Brown testified for the defendant. He denied that the transaction described by McCullough and Edrington had occurred. He stated that he had made a sale to them in the early morning of June 25, 1969. His further testimony was that the defendant had not been there—that he had not shared the residence with him, and, of course, that he had not sold heroin to Edrington. Thus, the crucial issue in the case was whether the incident had occurred.

I.

■ Defendant's first contention is that the court erred in denying his motion for mistrial following testimony of the witness Edrington to the effect that defendant had requested that he, Edrington, administer a "fix." This was just prior to or contemporaneous with the sale here in question. The argument is that this testimony, showing as it did that the defendant was a narcotics user, was irrelevant to the charge that he had made the sale described in the indictment and was therefore prejudicial.

Involved in this contention is the familiar rule that crimes and transactions which are not charged in the indictment which do not tend to establish any element of the offense charged are collateral, inadmissible and prejudicial. Mills v. United States, 367 F.2d 366, 367 (10th Cir. 1966). It was noted in *Mills* that the test of admissibility of evidence of this nature is whether it is material to any issue in the case and tends to prove the crime charged.[1]

1. Woodland v. United States, 347 F.2d 956 (10th Cir. 1965); Weeks v. United States, 313 F.2d 688 (10th Cir. 1963), cert. denied, 373 U.S. 922, 83 S.Ct. 1523,

■ Where, as in Mills v. United States, *supra*, the so-called similar offenses are wholly unrelated to the crime charged, it is error to receive them. In *Mills* the defendant was charged with violation of the Dyer Act and the government introduced evidence as to a number of no-account checks which had been issued by the defendant.

In the case at bar the relationship between the act complained of and the charge in the indictment is clear. This act occurred during and in connection with the sale of the heroin and was an inseparable part of the sale transaction. Moreover, it tended to establish the essential element of knowledge. Hence, the evidence was properly received and the ruling denying a mistrial was correct.

## II.

■ The closing arguments which are here claimed to constitute plain error consisted of comments on the heinousness of heroin, the infrequency of valid orders as required by the statute, the consequences of the use of heroin—its tendency to bring about other crimes such as larceny, burglary and robbery. There was also a misstatement with respect to the evidence, and a statement as to the potential danger to the country posed by the narcotics traffic. No objection was interposed by counsel for the defendant to any of these statements, and so the question is whether the arguments so far exceeded reasonable bounds so as to constitute plain error. *See* Van Nattan v. United States, 357 F.2d 161 (10th Cir. 1966), wherein it was said:

Government counsel, during his closing argument, referred to appellant "as a narcotics user" and "as a man who was addicted to narcotics." No objection was made to such references at the trial. For that reason we are precluded from considering the

point unless we can say it was plain error affecting appellant's substantial rights under Rule 52, F.R.Crim.P. There was evidence in the case to the effect that Van Nattan had been a user of narcotics and marijuana and that he had been convicted of possession of both marijuana and narcotics. In view of this evidence, even had timely objection been made, the government prosecutor's statements were within the bounds of proper argument. We certainly cannot say that the argument constituted clear error.

A very similar question was considered in United States v. Ramos, 268 F. 2d 878 (2d Cir. 1959). The district attorney referred to traffic in narcotics as "a dirty business," "a vicious business," "a sneaky business," and as "a vicious racket." He also referred to the purchase price of three ounces of heroin as "representing $1,265 worth of human degradation." The court held that it was not improper for counsel for the government to "emphasize the importance of the case by calling attention to the unsavory nature and the social consequences of illicit traffic in narcotics * * *."

■ We agree that the district attorney is entitled to reasonable latitude in drawing inferences from the record. However, this does not mean that he can comment at length concerning the social consequences of the particular crime, including the known fact that narcotics traffic breeds other crimes. We disapprove of such comments. The district attorney should devote his efforts to the evidence presented. On the other hand, the matters mentioned are generally recognized truths, and considering the substantial evidence supporting the conviction and the apparent deep involvement by defendant in narcotics traffic, we cannot say that the arguments constituted plain error "affecting appellant's substantial rights under Rule 52, F.R. Crim.P."

10 L.Ed.2d 421 (1963); O'Dell v. United States, 251 F.2d 704 (10th Cir. 1958); Suhay v. United States, 95 F.2d 890

(10th Cir. 1938), cert. denied, 304 U.S. 580, 58 S.Ct. 1060, 82 L.Ed. 1543 (1938).

The alleged misstatement of the evidence which is also complained of is an immaterial matter which does not merit comment.

## III.

■ Defendant's objections to the trial court's charge concern the failure to adequately instruct as to the elements of the particular offense and, especially, the failure to define the term "sale"— and also the absence in the charge of an explanation of the exceptions to 26 U.S. C. § 4705(a), and, finally, the court's alleged failure to give a special instruction as to the credibility of the accessory Edrington.

The jury was, however, adequately told that the government was required to prove beyond a reasonable doubt that (1) there was a sale of a narcotic drug, and (2) that said sale was not pursuant to a written order of the person to whom such article was sold on the prescribed form. The court went on to instruct that the act must have been accomplished with requisite intent to violate the law.

The case of Kelley v. United States, 107 U.S.App.D.C. 122, 275 F.2d 10 (1960), relied on by the defendant, was a case in which the court held that it was essential that the jury be instructed as to the elements necessary to establish a sale by the accused. There, however, the transaction was highly ambiguous and whether a sale within the meaning of the statute had occurred was a crucial question. Here there was not and could not be a dispute as to whether there had been a purchase and a sale. The question was whether the witnesses McCullough and Edrington had indeed testified truthfully as to their dealings with the defendant. The jury was required to decide whether they were telling the truth or whether the defendant's witness Ernest Palmer Brown was testifying truthfully when he stated that the defendant had not even been in his house on the day in question. Here the need for a definition of "sale" was not suggested at the trial and there was no reason for the court to believe that such an amplification of the charge was required.

■ Turning to the issue whether the trial court was required to give a cautionary instruction as to the credibility of the informer Edrington, our situation is the same as that which obtained in Todd v. United States, 345 F.2d 299 (10th Cir. 1965). In *Todd* a cautionary instruction was specifically requested and refused. This court held that it was not error because the prosecution's case was not wholly dependent upon the testimony of the informer. Here, also, there is substantial corroboration and hence the trial court was not compelled under *Todd* or any other case to give such an instruction—particularly on its own motion.

Finally, there was no need to instruct with respect to the exceptions applicable to the pertinent statute. Such an explanation would not in these circumstances have served to clarify the issues or to contribute any information which would have aided in deciding the case.

## IV.

■ The alleged deficiency in supplying all of the links in the chain of evidence leading to identification of the heroin arises from the failure of the district attorney to obtain an identification from the witness McCullough of the exhibits offered in evidence consisting of the lock seal envelope, the capsule, the chemist's vial and the pill container. McCullough, the narcotics agent, had testified that upon receiving the purchased capsule from Edrington, that he had shown it to his fellow agents and had then wrapped the capsule in foil, and that all of them including Edrington had initialed it on the outside. He had retained it in this form until the next day at which time he had placed it in a small metal box, sealed it in a lock seal envelope and forwarded it to the Oklahoma State Bureau of Investigation laboratory in Oklahoma City.

Brian Tippton, the chemist, testified that he had received a parcel from Mc-

Cullough in due course at the Oklahoma State Bureau of Investigation laboratory. He analyzed the substance and found that it contained a considerable percentage of heroin. He produced the items at the trial and stated that they had been in his custody from the time of receipt until the time of the trial. The items were offered and received without objection.

The total facts and circumstances adequately established that the exhibits were the identical ones which had been mailed by McCullough. Consequently, in the absence of evidence showing the presence of a question as to the authenticity of these exhibits, it cannot be said that it was plain error for the court to receive them.

The judgment is affirmed.