**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Quay Douglas WORTH, Defendant-Appellant.**

**No. 74–1137.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 13, 1974.

Decided Nov. 11, 1974.

Certiorari Denied March 3, 1975. See 95 S.Ct. 1358.

---

**1208**

Leonard D. Munker, Federal Public Defender, Wichita, Kan., for defendant-appellant.

Stephen K. Lester, Asst. U. S. Atty., Wichita, Kan. (Robert J. Roth, U. S. Atty., Wichita, Kan., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY and Mc-WILLIAMS, Circuit Judges, and CHRISTENSEN, Senior District Judge.*

CHRISTENSEN, Senior District Judge.

The appellant Quay Douglas Worth was tried by jury and convicted on a four count indictment charging possession and transfer of a sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d), 5812, and making a false statement to obtain twenty sticks of dynamite, and unlawfully as a felon receiving the dynamite in violation of 18 U.S.C. § 842(a)(2) and 18 U.S.C. § 842(i)(1).

The record before the trial court left little room for dispute about the facts and no basis at all for doubt concerning the appellant's commission of the prohibited acts under the circumstances charged in the indictment. Whatever significance the case has beyond the lot of the parties is the inquiry it invokes concerning (1) the splitting of prosecutions between federal and state courts

* Of the District of Utah, sitting by designation.

based upon the same or related transactions, (2) whether under such circumstances an accused taking the stand in the federal court in support of his entrapment defense retains Fifth Amendment rights limiting inquiry concerning other conduct relevant to his predisposition to commit the offenses charged, (3) whether in any event the federal prosecution someway impinged rights under the Double Jeopardy Clause, and (4) the extent, if any, to which the prosecutor could properly comment before the jury on the seriousness of the charge remaining to be tried before the state court. While some of these problems lurked in United States of America v. James Walter Hawke, Sr., 505 F.2d 817, decided today, we now reach aspects of the entrapment defense which there was no need to consider there.

For essential framework facts we can do no better than quote from the candid statement appearing in appellant's brief:

"The criminal episode for which the defendant stood trial occurred in the following manner. The defendant, Quay Douglas Worth, on or about July 26, 1973, through negotiations sold to Kent Green a government informant, a sawed-off shotgun in violation of the National Firearms Act. The defendant Worth and Kent Green were acquaintances of long standing having previously served felony sentences together at the Kansas State Penitentiary at Lansing, Kansas. Kent Green, as an informant, was working with a Treasury Agent of the Alcohol, Tobacco and Firearms Division of the Department of Treasury, and an agent of the Kansas Bureau of Investigation

. . . There were further negotiations to purchase dynamite and cocaine on July 31, 1973. [And it was not questioned that both dynamite and cocaine, as well as the firearm, were purchased from appellant as a result of these negotiations.] . . . [T]he cocaine was purchased with funds from the Kansas Bureau of Investigation . . . The cocaine mentioned in the case was the subject of a state charge in the District Court of Sedgwick County, Kansas, State of Kansas vs. Quay Douglas Worth, Case No. 73–CR–3151. . . ." [At the time of the federal trial the state case had not been tried.]

Appellant, without flatly standing upon the premise, argues that "if the ruling in the Martinez case [1] requires the defendant to take the stand to assert the entrapment defense" his Fifth Amendment rights were violated in view of the pending state prosecution. This interpretation of *Martinez* inferentially was rejected in *Hawke*. We now expressly determine consistently with *Martinez* that testimony from an accused is not prerequisite to his reliance upon the defense of entrapment.[2]

 Of course, in the absence of such testimony the defense of entrapment may not sufficiently appear as to warrant submission of the issue to the jury. And as in the case of any other defense premised significantly upon state of mind, failure of the accused to take the stand may or may not leave other prima facie evidence unconvincing or insufficient to raise a reasonable doubt of guilt. Such practical consequences, contrary to appellant's contention, cannot be considered to render appearance of the

1. Martinez v. United States, 373 F.2d 810 (10th Cir. 1967).

2. A reference to the opinion in *Martinez* itself, together with the fact not therein disclosed but revealed by the record in that case that the defendant did not take the stand, is supportive of this conclusion: "The fact that an accused asserts the affirmative defense of entrapment does not shift the burden of proof to him. When the defense is raised or asserted, the burden is upon the government to prove beyond a reasonable doubt that entrapment did not occur . . . Without reviewing in this opinion the evidence in this case we believe from a reading of the record the trial court properly submitted the issue of entrapment to the jury." 373 F.2d at 812.

accused as a witness involuntary. The appellant's testimony in support of his entrapment defense was voluntary as far as this case was concerned. What his situation might be in another court on another charge does not alter the result here, although we can see no likelihood of impermissible "compulsion" resulting elsewhere from the circumstances of the charges and testimony in the federal court.

Appellant's next contention relates to his cross-examination after having elected to take the stand in his own defense. On direct examination he had testified that about the time he found the shotgun in question he had "run across a couple or three things." On cross-examination he stated that he "didn't really run across anything" but merely heard from some friends that "they (sic) might be some automatic weapons around." He refused to say who these friends were, despite direction from the court to do so. At a bench conference objection on the ground of immateriality was brushed aside and the trial judge stated that he had directed the witness to answer and "if he still refuses [upon resuming before the jury] we will take that up at a later time." The appellant in the presence of the jury reaffirmed his unwillingness to answer concerning the source of his information about automatic weapons. To the question of where he obtained the shotgun, he answered: "From a friend" but "I will not implicate him in it either." Appellant's objection to inquiry concerning the source of the cocaine was sustained. While the court left no room for doubt that it expected answers to the questions held to be proper, the possibility of any sanction was suggested only out of the presence of the jury (no sanctions were ever applied) and the entire impasse was treated with similar moderation as far as the record discloses.

█ A defendant who takes the stand and testifies in his own defense cannot claim privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. " . . . [T]he breadth of his waiver is determined by the scope of relevant cross-examination." Brown v. United States, 356 U.S. 148, 154, 78 S. Ct. 622, 626, 2 L.Ed.2d 589 (1958). See also Fitzpatrick v. United States, 178 U. S. 304, 20 S.Ct. 944, 44 L.Ed. 1078 (1900). The scope of cross-examination is within the sound discretion of the trial court. We are of the opinion that its evidentiary rulings did not constitute abuse of that discretion. The rulings were non-prejudicial in any event.

█ We reject the contention that mere involvement at the trial of evidence that cocaine was sold in connection with the sale of the dynamite somehow ran afoul, in view of the state and federal prosecutions, of the Double Jeopardy Clause of the Fifth Amendment or the doctrine of collateral estoppel, or otherwise improperly prejudiced the appellant. Since federal funds were used in the purchase of the firearm and the dynamite, and state funds were used for the purchase of the cocaine, it was not irrational or essentially manipulative for the prosecutions to be separated on that basis.

█ It would seem that neither the Double Jeopardy Clause of the Fifth Amendment and the Fourteenth Amendment now held to encompass it, Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), nor the doctrine of collateral estoppel would foreclose under the circumstances of the present case prosecution by both sovereigns for a single act violating the laws of each. Bartkus v. Illinois, 359 U.S. 121, 79 S. Ct. 676, 3 L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); United States v. Smaldone, 485 F.2d 1333, 1343 (10th Cir. 1973). Cf. Ashe, supra, and Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). Much less do these doctrines apply when, as here, the sales of the dynamite and the cocaine, although contemporaneous, comprised essentially two acts. Robinson v.

United States, 366 F.2d 575 (10th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S. Ct. 717, 17 L.Ed.2d 547 (1967).

■ There is nothing inconsistent in this view with acceptance of the materiality and relevancy of the cocaine sale to the federal charge for transferring the dynamite. The two transactions were inextricably interwoven. Evidence of the sale of the cocaine was directly relevant to the contemporaneous dynamite sale and, in view of the defense of entrapment, to the predisposition of the appellant to commit each of the offenses charged in the federal indictment. United States v. Hawke, 505 F.2d 817 (10th Cir. 1974), *supra*; United States v. Gilbert, 447 F.2d 883 (10th Cir. 1971); United States v. Sluder, 457 F. 2d 703 (10th Cir. 1972); Robinson v. United States, 366 F.2d 575 (10th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S. Ct. 717, 17 L.Ed.2d 547 (1967), *supra.*

Finally, appellant complains of prosecutorial misconduct when counsel for the government stated during oral argument:

> "And he transferred a vial of cocaine, a hard narcotic. And I can't say enough bad about cocaine and I can't say enough bad about people who would sell it. In that respect I again ask you 'who weren't the victims' because that cocaine that was testified to is now in the police department laboratory."

■ Appellant's counsel failed to lodge timely objection to this language. It has been held repeatedly that where there is no objection to the prosecution's closing arguments at the time, related contentions will not be considered on appeal in the absence of error prejudicial to the fundamental rights of an accused. See *e. g.*, United States v. Gilbert, 447 F.2d 883, 886 (10th Cir. 1971), *supra*;

McManaman v. United States, 327 F.2d 21, 24 (10th Cir. 1964).

■ We are not impressed with the government's argument that the quoted statement ‧was made in appropriate response to the assertion of appellant's counsel that Worth had committed only "victimless crimes". Such a contention, indeed, had been made with reference to the crimes charged in the federal indictment. Concerning those, government counsel had the right to argue, and did so effectively, that the sales of dynamite and the sawed-off shotgun under the circumstances were not in reality victimless crimes. To go beyond this in berating the defendant specifically for the cocaine sale tended to move the latter charge entirely into the federal tent when there was the right to get in only its nose on the theory of comminglement of circumstances and appellant's predisposition to commit the federal offenses.

■ It cannot be thought that the offending remarks constituted plain error affecting appellant's substantial rights within the meaning of Rule 52 Fed.R.Cr.P. United States v. Gilbert, 447 F.2d 883 (10th Cir. 1971), *supra*, *Cf.* Epperson v. United States, 490 F.2d 98 (7th Cir. 1973). What was said hardly could have added force to the effect of the overwhelming evidence properly before the jury on all issues of the case. But we note our disapproval of such comments as we did in *Gilbert*, where they related more directly to the crime being tried. And by reason of this difference, and in further discouragement of similar excesses in the future, we feel constrained to add that the condemnatory statement under the circumstances constituted a substantial departure from acceptable standards for argument on behalf of the United States.

Affirmed.