UNITED STATES of America, Appellee,

v.

John William LAMB, Appellant.

UNITED STATES of America, Appellee,

v.

Michael Todd CLARY, Appellant.

UNITED STATES of America, Appellee,

v.

Richard Allen BENFIELD, Appellant.

UNITED STATES of America, Appellee,

v.

Paul JORGENSON, a/k/a Harry Edward Johns, Jr., Appellant.

No. 77–1347 and Nos. 77–1362 to 77–1364.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted April 19, 1978.

Decided May 17, 1978.

William W. Deaton, Federal Public Defender, Albuquerque, N. M., for appellants, John William Lamb, Michael Todd Clary, Richard Allen Benfield, and Paul Jorgenson.

Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief, and Robert Bruce Collins, Asst. U. S. Atty., Albuquerque, N. M., for appellee.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

SETH, Chief Judge.

Appellants, John William Lamb, Michael Todd Clary, Richard Allen Benfield, and Paul Jorgenson, were convicted in the United States District Court for the District of New Mexico of a conspiracy to rob, armed robbery, and larceny of a federally insured savings and loan institution; kidnapping Marvin Stark from Tucson, Arizona, to Albuquerque, New Mexico, in his car; kidnapping Douglas Keeffe from Albuquerque, New Mexico, to Lakewood, Colorado, also in his car; knowingly transporting Stark's stolen car from Arizona to New Mexico, and knowingly transporting Keeffe's stolen car from New Mexico to Colorado. These appeals, which have been consolidated, raise issues as to some appellants, and as to all.

The Government's evidence established that the appellants escaped from the Arizona State Penitentiary in Florence, Arizona. A Correction Service officer was abducted by appellant Clary from the traffic control station just north of the entrance to the prison compound. Clary was met by the other appellants in the prison parking lot where they demanded the officer's keys. He was then taken, along with his automobile, to Tucson, Arizona. There the defendants forced their way into Mr. and Mrs. Goforth's apartment at gunpoint. The defendants used the Goforth apartment as a

"safe house" to exchange prison garb for street clothes, and they took Goforth's Volkswagen in place of the prison guard's auto.

Early the following morning, defendant Clary kidnapped Marvin Stark from a local bar, again at gunpoint. The appellants abandoned the Goforth automobile, and ordered Stark to drive them in his brown Pontiac to New Mexico. The testimony established that Clary held a gun on Mr. Stark at all times during this trip.

The appellants, along with their hostage, Mr. Stark, arrived in Albuquerque, New Mexico. That morning they began driving around town looking for the bank which would be the least difficult to rob. The appellants decided upon the Albuquerque Federal Savings and Loan.

In order to fully develop the bank robbery scheme, time and additional space were necessary. It was at this point that appellants Clary and Jorgenson forced their way into Douglas Keeffe's apartment at gunpoint. Mr. Keeffe was ordered to stay in his apartment while the defendants proceeded to discuss the details of the bank robbery. The Government produced a floor plan of the bank written on spiral notebook paper which had been recovered from Keeffe's apartment. A Federal Bureau of Investigation Agent identified appellants Clary's and Lamb's fingerprints on this spiral notebook paper.

Defendants Clary and Lamb robbed the bank at gunpoint while Jorgenson and Benfield guarded their hostages, Stark and Keeffe, in the brown Pontiac which was parked nearby. Bank employees at trial identified appellants Clary and Lamb as the men who robbed the bank. The bank's surveillance cameras also photographed Clary behind the teller line while he was taking money from the teller's cash drawer.

After the robbery, appellants Clary and Lamb returned with Stark and Keeffe to the apartment. There the money from the bank was divided into equal parts among the appellants. The Government was also able to produce a sheet of paper found in Keeffe's apartment computing the four

equal shares from the money which had been stolen. The fingerprints of appellants Jorgenson and Benfield were identified on this sheet.

That night the appellants drove to Lakewood, Colorado, with Keeffe and Stark. They checked into a local motel, keeping Keeffe and Stark under guard in a room. The next day the appellants departed from Lakewood, leaving Keeffe and Stark bound and gagged in the motel. The hostages were able to free themselves and then notified the local authorities. The defendants were arrested in various parts of the country and brought back to stand trial in New Mexico.

The several issues raised by the appellants are as follows:

## I.—FIFTH AMENDMENT—SELF–IN-CRIMINATION (Clary, Benfield):

Clary and Benfield argue that their Fifth Amendment rights were violated through the manner in which the Government's cross-examination of them was conducted.

Clary testified in his own behalf concerning the kidnapping of Stark and Keeffe. He stated that he was asleep in Keeffe's apartment during the time period when the bank robbery took place. On cross-examination, the Government asked Clary about the bank robbery, and he invoked his Fifth Amendment privilege.

The trial judge ruled that Clary's answers on direct examination concerning his whereabouts during the bank robbery waived his privilege against self-incrimination. We note that despite this waiver, Clary was not compelled to testify. In addition, after repeated questions by the Government, the court advised the Government not to pursue that line of questioning in order to ensure that Clary would not be prejudiced by his assertion of privilege.

Similarly, Benfield had testified in his own behalf concerning the kidnapping of Stark and Keeffe and the Dyer Act charges, stating that Stark and Keeffe were paid, voluntary companions. Ben-

field's attorney, during direct examination, informed the court that he had instructed Benfield not to answer questions concerning the bank robbery. The trial judge held that the assertion of the Fifth Amendment with regard to the bank robbery was invalid where Benfield had testified as to a part of the whole sequence of events. The judge allowed the Government to ask Benfield one question about the bank robbery, to which question Benfield asserted his Fifth Amendment privilege. The Government asked no further questions of Benfield concerning the robbery.

As we stated in *United States v. Worth*, 505 F.2d 1206, 1210 (10th Cir.):

"A defendant who takes the stand and testifies in his own defense cannot claim privilege against cross-examination on matters reasonably related to the subject matter of his direct examination . . The breadth of his waiver is determined by the scope of relevant cross-examination. *Brown v. United States*, 356 U.S. 148, 154, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 . . . (1958)."

We hold that both Clary and Benfield waived their Fifth Amendment privilege, and that the trial court, in its discretion, properly supervised the scope of cross-examination in response to their invalid assertions of that privilege.

## II.—RIGHT TO CONFRONT A WITNESS (Lamb, Benfield, Jorgenson):

Appellant Clary testified in his own behalf concerning the kidnapping of Stark and Keeffe. However, when the Government on cross-examination asked if he had robbed the bank, Clary asserted his Fifth Amendment privilege.

The other appellants claim that Clary's assertion of his Fifth Amendment privilege denied them their right to confront him as a witness against them. However, the record reflects that neither the Government's questions nor Clary's responses implicated the other appellants in any manner.

In addition, the record fails to show any requests by any other coappellants to cross-examine Clary. Instead Jorgenson's coun-sel had informed the court on behalf of the three coappellants that the appellants did not have any questions for Clary. Thus, where coappellants had the opportunity to cross-examine Clary if they desired to do so, there appears to be no denial of the Sixth Amendment right of confrontation. *See United States v. Troutman*, 458 F.2d 217 (10th Cir.). In view of our conclusion that appellants waived their right to cross-examine Clary, we refuse to speculate as to what extent Clary would have asserted the Fifth Amendment and to what extent cross-examination would have been limited thereby.

## III.—PRIOR CONVICTIONS (Benfield):

Benfield testified at trial in his own behalf. On cross-examination his prior convictions of aggravated battery, breaking and entering, and armed robbery were introduced into evidence. Benfield argues that the probative value of these convictions on the issue of his creditability was far outweighed by the prejudicial impact of such convictions in the jurors' minds.

Rule 609(a)(2), Federal Rules of Evidence, deals with the admission into evidence of other crimes involving dishonesty for purposes of impeaching a witness's creditability. However, Rule 609(a)(1) is much broader in scope, and allows the admission of prior convictions not involving dishonesty, where the court in its discretion finds that such prior convictions will be of probative value on the issue of creditability, and finds that the probative value outweighs the prejudice. *United States v. Smith*, 521 F.2d 374 (10th Cir.); *United States v. Wolf*, 561 F.2d 1376 (10th Cir.).

Where Benfield's testimony directly contradicted the testimony of Stark and Keeffe regarding the kidnapping, and where the record demonstrates that the court carefully weighed the Government's need to impeach Benfield's creditability with the impact the admission of Benfield's prior convictions would have on the jury, we hold that the court did not abuse its discretion in admitting the prior convictions as authorized under Rule 609(a)(1).

### IV.—PRIOR CRIMINAL ACTIVITY (All Appellants):

All appellants argue that evidence concerning the escape from prison and the commandeering of the Goforth apartment should not have been admitted where the appellants were not charged with crimes concerning these activities. Evidence of other crimes is admissible to prove a continuing plan or scheme so long as that evidence is inextricably bound up with the acts charged. It is, of course, important to weigh the probative value as opposed to the prejudicial impact that introduction of this type of evidence could have. However, we hold that on balance this evidence was admissible.

The evidence established that appellants had very little money when they abducted the prison guard in Florence, Arizona. In order to finance movement through Arizona and New Mexico, they planned the bank robbery.

Evidence of the manner in which the abduction of the prison guard, and confinement of the Goforths in Tucson were accomplished is particularly probative of the measures employed by appellants in kidnapping Stark and Keeffe.

The escape, abduction of the prison guard, and commandeering of the Goforth's apartment and car were all part of a chain of events leading to the crimes charged. *Chase v. Crisp*, 523 F.2d 595 (10th Cir.); *United States v. Roe*, 495 F.2d 600 (10th Cir.). The challenged evidence was admissible under Rule 404(b), Federal Rules of Evidence, as proof of "preparation," and "plan," and to establish their motive for robbing the bank in Albuquerque.

### V.—CHANGE OF VENUE (All Appellants):

The controlling authority is Rule 21, Fed. R.Crim.P. The relevant part reads as follows:

"(a) For Prejudice in the District. The court upon motion of the defendant shall transfer the proceeding as to him to another district whether or not such district is specified in the defendant's motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district."

A fair and impartial trial must have been impossible due to prejudicial pretrial publicity. These motions were denied.

The grant or denial of the motion for a change of venue is specifically within the discretion of the trial judge. The proper occasion for determining juror partiality is upon voir dire examination. *United States v. Hall*, 536 F.2d 313 (10th Cir.).

During voir dire, the trial judge asked prospective jurors if they had read the newspaper articles and if such reports would influence their judgment in the case. The evidence presented below showed that some prospective jurors had either read newspaper accounts or watched television reports on the kidnapping and robbery. However, simply because a prospective juror admits having read newspaper accounts relative to a criminal charge is not in itself sufficient grounds for excusing a juror. *United States v. Hall*, 536 F.2d 313 (10th Cir.).

Each prospective juror assured the court he could determine guilt or innocence strictly on the evidence brought out in court. In addition, the trial judge asked defense counsel whether additional voir dire was desired. Each responded that it was not. Furthermore, the trial judge granted defense counsels' challenge for cause regarding all prospective jurors who indicated they had read several articles about the case. The appellants have failed to introduce evidence to support their claim that the trial court abused its discretion in denying the motion for a change of venue.

### VI.—ILLEGAL REMOVAL HEARING (Lamb):

Lamb claims that his removal from Tulsa to Albuquerque did not comply with Rule 40(b)(3)(B), Fed.R.Crim.P., in that the

removal hearing was held prior to the filing of the indictment. Lamb speculates that other aspects of the hearing may have been illegal but there is no transcript available to prove or disprove his allegation. Lamb's vague unsubstantiated claim is governed by the rule that any alleged violation of the required removal procedures does not nullify subsequent proceedings and is not appealable. *United States v. Woodring*, 446 F.2d 733 (10th Cir.).

### VII.—ORDER THAT LAMB SHAVE HIS BEARD (Lamb):

A hearing was held on the Government's motion that Lamb shave his beard. The trial judge ordered that Lamb shave his beard where testimony indicated that Lamb had been clean-shaven at the time of the robbery, and that, therefore, Lamb's beard was an attempt to disguise his appearance to prevent trial identification.

 Lamb's claim that this order violated his Fifth Amendment privilege against self-incrimination is without merit. The Supreme Court has long maintained that the Fifth Amendment protection extends only to self-incrimination which is testimonial in nature. The privilege does not prevent a defendant from being required to put on a piece of clothing, *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, or to put on a stocking mask, *United States v. Roberts*, 481 F.2d 892 (5th Cir.). Nor does that amendment protect the defendant from giving a blood sample, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, or from furnishing handwriting exemplars, *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

### VIII.—CONTINUANCE (Benfield, Jorgenson):

 Benfield and Jorgenson argue that the denial of their motions for continuance was an abuse of discretion, and that their counsels' assistance was ineffective due to the lack of time to prepare. Both Benfield and Jorgenson were arrested in Buffalo, New York, on January 27, 1977, and were

removed to the District of New Mexico on February 22, 1977. Attorneys were appointed to represent each appellant on February 23, 1977. Trial began on March 28, 1977.

Where appellants' attorneys had nearly five weeks to prepare for trial, we cannot say that the trial court abused its discretion in denying appellants' motions for continuance in this case. *United States v. Evans*, 542 F.2d 805 (10th Cir.).

Further, the record reflects that the quality of representation afforded these appellants was in no way hampered by the alleged lack of time to prepare. Appellants have totally failed to demonstrate ineffective assistance of counsel under this Circuit's test. *Gillihan v. Rodriguez*, 551 F.2d 1182 (10th Cir.); *United States v. Krohn*, 573 F.2d 1382 (10th Cir. filed April 3, 1978).

Accordingly, all claims of all the appellants having been considered, we find no error. The judgment as to each defendant is AFFIRMED.