This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Randy Charlton, appeals his conviction in the Lorain County Court of Common Pleas. We reverse.
 I.
On March 2, 1998, a search warrant was executed at Mr. Charlton's residence at 2243 Oakdale Avenue, Lorain County, Ohio. The search produced a marijuana cigarette, a digital scale, a knife with traces of cocaine on it, a coffee pot having cocaine residue on the sides, and cocaine in an amount exceeding one hundred grams. Additionally, over $10,000 in U.S. currency was found in the house.
Following the execution of the search warrant, Mr. Charlton told the police that he acquired the drugs from Reginald Smith. He stated that the money was to pay Mr. Smith for the drugs. At that point, Mr. Charlton agreed to cooperate with the police. A video surveillance was set up in Mr. Charlton's house and controlled purchases of drugs were videotaped by police. Sometime later, Mr. Charlton ceased his assistance to the police and testified at Mr. Smith's trial that Mr. Smith had never come to Mr. Charlton's house. Thereafter, Mr. Charlton was indicted for perjury.
On September 22, 1998, the Lorain County Grand Jury indicted Mr. Charlton for the offenses of one count of possession of crack cocaine in an amount exceeding one hundred grams, in violation of R.C. 2925.11(A), one count of possession of drug abuse paraphernalia, in violation of R.C. 2925.14(C)(1), one count of possession of criminal tools, in violation of R.C. 2923.24(A), and one count of possession of marijuana in an amount less than two hundred grams, in violation of R.C. 2925.11(A).
On January 22, 1999, Mr. Charlton filed a motion to suppress evidence. In a motion hearing on April 23, 1999, Mr. Charlton's counsel moved for the court to recuse itself on the case, or, alternatively, on the issue of the search warrant, on the basis that the judge herself had signed the challenged warrant. Such motion was denied. On July 28, 1999, Mr. Charlton filed a motion to compel disclosure of a confidential informant and other exculpatory evidence. A hearing on the motion to suppress and the motion to compel disclosure was held on September 2, 1999. Both motions were denied.
Mr. Charlton filed a notice of intent to assert the affirmative defense of entrapment on November 17, 1999. On December 21, 1999, Mr. Charlton's case was set for trial. Before the jury was sworn in, Mr. Charlton notified the court that he intended to call Daryl Davis to the stand at trial as part of the affirmative defense of entrapment. The court determined that a prima facie showing needed to be made as to Mr. Davis' testimony. Mr. Charlton's counsel was told to put Mr. Charlton on the stand to substantiate whether the issue was indeed relevant and more than mere speculation.
Mr. Charlton took the stand and testified that Mr. Davis, his cousin, had brought over nine ounces of cocaine within eight hours of execution of the warrant. Following Mr. Charlton's testimony, the state called Lieutenant James Rohner of the Lorain police department. Upon completion of the Lieutenant's testimony and cross-examination, the state called Mr. Davis to the stand to give testimony and be cross-examined. Following such testimony, the trial court ruled that Mr. Charlton had not met his burden and had failed to make a prima facie showing as to any element of entrapment. The court also found that Mr. Charlton had just confessed to the crime charged. Following a recess, Mr. Charlton entered a plea of no contest to each of the charges. The trial court subsequently found him guilty on each count.
On January 14, 2000, Mr. Charlton, through new counsel, filed a motion to withdraw his no contest plea. Such motion included a request that the trial court recuse itself so that the matter could be reassigned to a new judge. A hearing was held on the motion on January 28, 2000. The trial court denied the motion to withdraw Mr. Charlton's plea of no contest. The court was prepared to immediately proceed to sentencing. Prior to sentencing, however, the court took a brief recess, during which Mr. Charlton fled the courthouse.
Mr. Charlton was located in the State of Georgia and extradicted to the jurisdiction of the Lorain County Court of Common Pleas. Prior to sentencing, on October 4, 2000, Mr. Charlton's counsel filed a motion to withdraw as attorney due to the "defendant's failure and refusal to cooperate with counsel." New counsel was assigned and the sentencing hearing went forward on October 5, 2000. Mr. Charlton was sentenced accordingly. This appeal followed.
 II.
Mr. Charlton asserts five assignments of error. As the fifth assignment of error is dispositive of the appeal, we will consider it first.
 A.
Fifth Assignment of Error
 THE TRIAL COURT ERRED WHEN IT REQUIRED DEFENDANT-APPELLANT TO RELINQUISH HIS FIFTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION IN ORDER TO ASSERT HIS SIXTH AMENDMENT RIGHTS AS WELL AS VIOLATING DEFENDANT-APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Mr. Charlton avers that the trial court erred when it ruled that he would not be able to call a witness at trial to support the affirmative defense of entrapment unless Mr. Charlton could make a prima facie showing of the relevance of the witness' testimony by taking the stand at a pre-trial hearing. Mr. Charlton states that such a procedure forced him to waive his privilege against self-incrimination under theFifth Amendment to the United States Constitution, as well as Section 10, Article I of the Ohio Constitution. We agree.
The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." Additionally, the Ohio Constitution also provides that no person shall be compelled in a criminal case to be a witness against him or herself. Section 10, Article 1, Ohio Constitution. This protection exists primarily to "assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." Maness v. Meyers
(1975), 419 U.S. 449, 461, 42 L.Ed.2d 574, 585. The protection afforded in this Amendment applies in any type of proceeding, whether civil, criminal, administrative, investigatory, or adjudicatory. Id. at 464,42 L.Ed.2d at 587; Lefkowitz v. Turley (1973), 414 U.S. 70, 77,38 L.Ed.2d 274, 281; Kastigar v. United States (1972), 406 U.S. 441, 444,32 L.Ed.2d 212, 217.
In order for a criminal defendant to successfully assert the affirmative defense of entrapment, the defendant must show, by a preponderance of the evidence, that the criminal design originated with government officials and such officials implanted the disposition to commit the alleged offense in the mind of an innocent person. State v.Doran (1983), 5 Ohio St.3d 187, paragraph one of the syllabus, 193. Evidence that is relevant to the predisposition of an individual to commit the crime should be freely admitted. Id. at 192. Relevant evidence on the issue of predisposition would include evidence which tends to establish:
 (1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity.
Id. "[U]nless it can be decided as a matter of law, the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the guilt or innocence of the accused." Sherman v.United States (1958), 356 U.S. 369, 377, 2 L.Ed.2d 848, 854. Therefore, the question of entrapment is generally a question for the jury to answer, rather than for the court. Mathews v. United States (1988), 485 U.S. 58,63, 99 L.Ed.2d 54, 61, citing Sherman, 356 U.S. at 377,2 L.Ed.2d at 854.
Significantly, "testimony from an accused is not prerequisite to his reliance upon the defense of entrapment." United States v. Worth
(C.A.10, 1974), 505 F.2d 1206, 1209. Rather, a defendant who claims entrapment has the Fifth Amendment right to remain silent and produce sufficient evidence of the affirmative defense through other means.Walker v. State (1997), 701 So.2d 1258, 1259; see, also, State v.Nemeckay (Dec. 20, 1990), Cuyahoga App. No. 57235, unreported, 1990 Ohio App. LEXIS 5657, at *11-12. A person claiming an affirmative defense retains this right even if his lack of personal testimony results in a deficiency of sufficient evidence to support jury instructions on such defense. State v. Seliskar (1973), 35 Ohio St.2d 95, 96 (holding that the choice is that of the defendant.).
In the present case, Mr. Camera filed a notice of intent to present the affirmative defense of entrapment. Before trial commenced, on December 21, 1999, Mr. Charlton's attorney notified the court that he intended to call Daryl Davis to the stand as an essential witness as part of such affirmative defense. The court responded that Mr. Davis was available if "he has anything relevant, competent or material to say." Mr. Charlton's attorney replied that his client would take the stand and contend that it was Mr. Davis who brought the drugs over to Mr. Charlton's house within hours of the execution of the search warrant. At that point, the state informed the court that it felt it incumbent upon Mr. Charlton to make a preliminary showing due to prior conflicting statements Mr. Charlton had made to law enforcement officials in the past. Mr. Charlton's attorney objected. The court ruled that it was "going to find out whether or not these witnesses have anything relevant, competent or material to say. Mr. Charlton can take the stand. * * * Put him on the stand. It's your burden." Additionally, the court told Mr. Charlton's attorney that "if you're going to present an affirmative defense of entrapment, then I want to hear what your client has to say on the stand under oath."
Mr. Charlton took the stand and was cross-examined despite objections on constitutional grounds. At the close of the examination of Mr. Charlton, the attorney for the state argued that "[Mr. Charlton has] just confessed to the crime as a matter of law. From what he said it cannot be entrapment." The court replied that "[t]hat would be my view as well." At the close of the pretrial hearing on the matter, the state argued that what "Mr. Charlton had to offer today in Court as to his reason for entrapment is nothing more than a confession[.]" The court agreed. Mr. Charlton's attorney then notified the court that Mr. Charlton still intended to call Mr. Davis to the stand as a witness for the entrapment defense. The court replied that "I will not only not allow you to do it, I will not allow you to do it in front of the Jury." The court then informed Mr. Charlton that he could make a proffer to preserve the issue for appeal. Following a recess, Mr. Charlton informed the court that he wished to tender a plea of no contest.
After thoroughly reviewing the record, we conclude that Mr. Charlton was compelled to incriminate himself in violation of theFifth Amendment. As a preliminary matter, we note that although Mr. Charlton's testimony occurred at a pre-trial hearing and not at trial, theFifth Amendment applies with equal force to the pretrial hearing. SeeCantillon v. Superior Court (C.D.Cal. 1969), 305 F. Supp. 304, 308
(holding that since "a person after arrest may stand mute and refuse to answer any questions, it would seem most incongruous if he could not thereafter, either through himself personally or through his attorney, refuse to answer inquiries touching upon the nature of his defense until he has in fact begun his defense at trial"). Here, a violation of Mr. Charlton's Fifth Amendment rights occurred when the trial court required Mr. Charlton to testify at a pre-trial hearing in order to make a prima facie showing as to the relevance, competence and materiality of a witness whom he intended to call at trial. Similarly, his rights were violated when the trial court told Mr. Charlton that, if he intended to assert the affirmative defense of entrapment, he must first testify under oath at the pretrial hearing to establish the merits of such a defense. As previously discussed, a defendant is not required to testify in order to assert an entrapment defense. Worth, 505 F.2d at 1209. Mr. Charlton's compelled testimony was later used by the court to determine that Mr. Charlton was, in fact, not entrapped and, consequentially, could not call Mr. Davis as a witness at trial.
Based on the foregoing, we conclude that, as Mr. Charlton had theFifth Amendment right to not take the stand and testify against himself, the trial court erred when it ruled that he must take the stand in order to make a prima facie case as to the relevancy of a witness' testimony and to assert the affirmative defense of entrapment. Accordingly, Mr. Charlton's fifth assignment of error is sustained.
 B.
First Assignment of Error
 THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT TO THE MAXIMUM SENTENCE ON COUNT ONE OF THE INDICTMENT.
Second Assignment of Error
 THE TRIAL COURT ERRED IN REFUSING TO APPOINT NEW COUNSEL TO REPRESENT DEFENDANT-APPELLANT OR CONDUCT AN INQUIRY INTO THE POTENTIAL CONFLICT OF INTEREST AFTER LEARNING THAT DEFENDANT-APPELLANT HAD FILED A COMPLAINT WITH THE BAR ASSOCIATION AGAINST ASSIGNED COUNSEL, THEREBY VIOLATING DEFENDANT-APPELLANT'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION.
Third Assignment of Error
 THE TRIAL COURT ERRED IN REFUSING TO GRANT DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS NO CONTEST PLEA, THEREBY VIOLATING DEFENDANT-APPELLANT'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION.
Fourth Assignment of Error
 DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
We need not address Mr. Charlton's remaining assignments of error as they have been rendered moot by our disposition of his fifth assignment of error. See App.R. 12(A)(1)(c).
 III.
Mr. Charlton's fifth assignment of error is sustained. His first through fourth assignments of error are rendered moot by this court's disposition of Mr. Charlton's fifth assignment of error. See App.R. 12(A)(1)(c). The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
WILLIAM G. BATCHELDER, BAIRD, J., SLABY, J. CONCUR.